Day, J.
 

 Plaintiff pleaded a suspension of the statute of limitations. This was traversed by the defendant. The burden was on the plaintiff to show by a preponderance of all the evidence in the case that he was entitled to such suspension.
 

 Is there any evidence in the record tending to show that the plaintiff was of unsound mind, within the meaning of the statute, at the time the cause of action accrued, and that when he did begin his action it was within one year from the removal of such claimed disability?
 

 Actions for damages for assault and battery are barred within one year unless within the exceptions set forth in Section 11229, General Code, which provides, in substance:
 

 “Unless otherwise specially provided therein, if a person entitled to bring any action mentioned in this chapter * * * is, at the time the cause of
 
 *329
 
 action accrues, * * * of unsound mind, * * * such person may bring it within the respective times limited by this chapter, after such disability is removed.”
 

 It is to be noted that said section is found in part third, title IV, division I, chapter 2, of the Code, and relates to rights that are remedial in character. A rule, therefore, for the interpretation of Section 11229 has been provided in Section 10213, which provides, in part, as follows:
 

 “In the interpretation of part third, unless the context shows that another sense was intended * * * the word * * # of ‘unsound mind’ includes every species of mental deficiency or derangement. ’ ’
 

 While we recognize the rule that “exceptions to statutes of limitation in favor of persons under disability are construed strictly and cannot be enlarged from considerations of apparent hardship or inconvenience,” yet we do not regard the same in conflict with Section 10214, General Code, which provides, in part:
 

 “The provisions of part third and all proceedings under it, shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice.”
 

 With these sections of the General Code in mind, it is necessary to consider the record to determine whether there is any evidence tending to show any species of mental deficiency or derangement from which the plaintiff was suffering which would prevent him from properly consulting with counsel, preparing and presenting his case, and attending to his affairs, and preclude him from asserting his
 
 *330
 
 rights in a court of justice, and, in the event such unsoundness of mind is found to exist, whether the petition in this cause was filed within one year after the removal of such deficiency.
 

 The record discloses, by the testimony of one of the physicians, that the condition of the mind of the plaintiff was not good for at least two years; that for probably a year he suffered from hallucinations; that the witness would not put any faith or credit in the imaginings of the plaintiff. By the testimony of another physician it appears that hemiplegia and aphasia resulted from the injury sustained by plaintiff; that the same were due to an injury to the speech center of the brain; that he could not call an object by its right name.
 

 A neighbor who knew plaintiff for a year and a half after the accident testified that the plaintiff did not know half the time what he was talking about; that he talked “kind of flighty” and did not seem to have his right mind; that he “would act like he would forget what he was saying, and always before that he was a smart man”; that his mind seemed to wander. Another neighbor testifying to the condition of plaintiff said that:
 

 “He was not like the same man he was before. Before he went away you could talk in conversation with him; he was a very smart man, intelligent man; and then one moment he would talk about one thing and in another about anything. Thought I do not know whether I would better talk to him or not. This condition lasted until just here lately he got like himself.
 
 * * *
 
 His mind would come and go like some one who is flighty.”
 

 Asked whéther you could put any faith in what
 
 *331
 
 lie said, this witness replied: “No, sir, I conld not; you could not tell whether he was right or not after being beaten like that.”
 

 Plaintiff’s wife testified that: He did “start to talk a little after six months, but I never could sit down and hold a conversation with him — the whole —and for nearly three years I would talk to him about one thing and he would go off on another.”
 

 In response to the question as to what he would talk about, the witness replied: “I would say, ‘Jack, you don’t know what I mean’; and he would say, ‘No; I don’t know.’ ”
 

 The record also discloses that on March 31, 1921, over a year before the filing of the petition, the plaintiff testified before the grand jury, relating the circumstances of the assault substantially as appears in his testimony in the present action. This was, of course, a significant circumstance to be taken into consideration in arriving at a solution of the problem presented. The testimony on the part of the plaintiff as to this claimed condition of unsoundness of mind tended to cover a period of time one to three years after the assault. The fact that some of the evidence tended to disprove the plaintiff’s claim did not take away his right to go to the jury on such evidence as tended to substantiate his right to maintain this action.
 

 It is urged that aphasia may exist while the mental faculties of judgment, memory, and understanding remain unimpaired, and that a person merely afflicted with aphasia is not necessarily of unsound mind. This also became a question of fact, whether the evidence of aphasia, together with all the other
 
 *332
 
 evidence, brought plaintiff within the statutory exception for those “of unsound mind.” If there was evidence tending to so show, it was a matter for the jury.
 

 In the event of a removal of claimed disability sufficient to permit the statute to begin to run, and afterwards a recurrence of the disability before the expiration of the full period of limitation, the question thereby raised, whether the statute of limitations continues to run from the date of such removal regardless of the return of the disability, is not presented by this record in such form that we feel justified in expressing an opinion thereon.
 

 On the whole record, therefore, we cannot say that there is no evidence entitling the plaintiff to go to the jury upon this issue of unsoundness of mind. What would have been the determination of the jury in the light of all the evidence in the case, under the instruction of the court as to the law, is, of course, another matter. It is sufficient to say.that in the state of the record we think the court of common pleas should have submitted the matter to the jury under proper instructions, and that the judgment of the Court of Appeals in affirming the judgment of the court of common pleas in directing a verdict was erroneous, and should therefore be reversed and the cause remanded for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Marshall, C. J., Jones, Matthias, Allen, Kin kade and Robinson, JJ., concur.