THOMAS F. SCHULTZ, Guardian, Appellee, v. GERALD GAY, Appellant.

FEBRUARY 12, 1929.

*W. H. Keating* and *Thomas J. Bray*, for appellant.

*McCoy & McCoy*, for appellee.

STEVENS, J.—John H. Schultz, a widower, advanced in years, on September 14, 1927, entered into a contract in writing with the appellant, a son-in-law, which forms the basis of this controversy. Very shortly after the execution of the contract, John H. Schultz applied to the district court of Mahaska County,

under the provisions of Section 12617 of the Code of 1927, for the appointment of a guardian, to manage and control his estate. The appellee, Thomas F. Schultz, a brother, was appointed, and duly qualified as such guardian. The property of the ward consists of various forms of securities, and, in the aggregate, amounting to something in excess of $30,000. Demand was made by the guardian upon the appellant, and refused, for the securities which had been turned over to him in accordance with the terms of the written contract referred to. The written instrument is construed by counsel for appellant as creating a trust, vesting the title to the securities in him for the heirs of John H. Schultz. This is the sole claim asserted by the appellant. The contract provided that:

"It is hereby mutually understood and agreed that, whereas John H. Schultz is unfit and unable to attend to his business that the undersigned hereby agree and authorize Gerald Gay to take full charge of the personal property, notes, bonds, moneys and credits and to look after the business of John H. Schultz."

It further provided that the said Gay should make annual written reports, showing the status of the property; that he should execute a bond in the sum of $35,000; that a full and complete list of the property should be made before the same should be turned over to him; that Maggie Eveland, daughter of John H. Schultz, should receive out of his estate a sufficient sum to make her share equal to that received by the other heirs from the estate of Elnora Schultz, their mother, the same to be paid at the same time that the heirs received their share; that Gay should give John H. Schultz what money he needed, from time to time; and that he should keep the money on interest in the bank, or loaned out on good security. The term mentioned in the contract was for three years, and the compensation agreed upon was $20 per year and 10 cents per mile for all mileage actually traveled. The contract is signed by John H. Schultz, Gerald Gay, and four daughters of the former.

It is the claim of appellee that John H. Schultz is, by reason of advanced years and failing memory, incompetent to manage his business. Without going into details as to the evidence, we deem it sufficient to say that the trial court found that he was incompetent to conduct and manage the same, and with this

finding we fully agree. It was this condition of his mind which caused him to enter into the written contract, and to place his business affairs in the hands of appellant, to be looked after and managed. He is, however, neither an idiot nor a lunatic, but simply incapacitated from transacting business, for the reasons stated. He therefore had the right to apply for the appointment of a guardian for himself.

The evidence, while not voluminous, discloses quite fully the circumstances surrounding the execution of the contract, and the purpose and necessity therefor. It is clear that John H. Schultz did not intend to part with the title to his property.

As already appears, the reason for the arrangement, as stated in the contract, is that Schultz was unfit and unable to attend to his business. Throughout the testimony, this is stated by all of the witnesses as the reason for the execution of the contract. The appellant testified on this point as follows:

"He told me—told us—that he wanted to turn things over to me, to look after his property. That was about all that he said, I believe. I objected to it. I told him I thought he had better get someone else, with more experience. I would be quite green. He insisted that I would take it. He said, 'It all belongs to you children, when I am through with it, and I think you ought to help me to take care of it.' I refused at first, and finally told him, if that was what he wanted, I would do it. I do not recall anything being said about how long I was to handle the property. As to paying money to anybody, he wanted me to make his children equal. He said he wanted to tear up his will, and he wanted to give Maggie enough to equalize her with the other children. I am not sure that the amount was mentioned. It was understood, of course, what the amount was. I do not know that Mr. Schultz had spoken to me before, what the amount would be to make Maggie equal."

Nothing appears to have been said by anyone at any time, prior to or at the time of the execution of the contract, about the appointment of a trustee, or the passing of title to the securities to him or the children. The preservation of the property and the proper management and control thereof were, we think, obviously the sole motive of John H. Schultz. This is the purpose of the written contract and of all of the oral negotiations.

There is apparently some ill feeling between the daughters of Schultz. He and his wife separated, a few years before her death. At the time of the separation, a contract was entered into between them, by which she was given certain property and money. In her will, she left one daughter, Mrs. Eveland, $10. The father believed that this disposition of her property was unjust, and in a will executed by him, he made provision for equalizing the share of Mrs. Eveland. This is the explanation of the clause in the contract referring to this daughter. The will was destroyed on the day the contract was executed. John H. Schultz made further provision for the support of his wife, by placing a Liberty bond for $2,100 in the safety box of Claude Eveland. Accompanying this arrangement, or subsequently, the father, in writing, expressed the purpose for which the deposit of the Liberty bond was made.

It is also the contention of appellant that the transfer of the property to him under the arrangements of the contract was intended to continue for the life of Schultz. There was talk to that effect at the lawyer's office, before the contract was written; but, after a discussion of the matter, a term of three years was agreed upon. The arrangement partakes very little, if at all, of the character of a trust. Schultz intended that his property should pass to his children, share and share alike, at his death, and he wanted that intention expressed in the contract. Mrs. Eveland, so far as her attitude is disclosed by the record, was and is in favor of the guardianship. The sole purpose of the contract being to place the securities and property of Schultz in the hands of appellant for preservation and management, and without any intention of parting with the title, the conclusion necessarily follows that appellee is entitled to the possession thereof.

In view of this conclusion, other propositions discussed need not be given consideration.—*Affirmed*.

ALBERT, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.