Allen, J.
 

 If Mrs. Schnopp was of sound mind during the seventy days subsequent to the entry of the judgment of May 29, 1929, then the Court of Appeals was correct in affirming the judgment of the court of common pleas, for the petition in error was filed upon October 30, 1929, and not within the statutory time. The guardian was appointed by the probate court prior to the filing of the petition in error in the Court of Appeals, and it is his contention here that Mrs. Schnopp was of unsound mind during the seventy-day period. If this fact is estab
 
 *304
 
 listed, she falls within the saving provisions of Section 12270, General Code, which reads:
 

 “No proceedings to reverse, vacate or modify a judgment or final order shall be commenced unless within seventy days after the entry of the judgment or final order complained of; or in case the person entitled to such proceedings is an infant, a person of unsound mind, or imprisoned, within seventy days exclusive of the time of such disability.”
 

 The phrase “of unsound mind” as defined in Section 10213, General Code, includes “every species of mental deficiency or derangement. ’ ’ The phrase was construed in
 
 Bowman
 
 v.
 
 Lemon,
 
 115 Ohio St., 326, 154 N. E., 317, 318, which declared that Section 11229, General Code, must be read together with Section 10213, General Code, for the construction of the phrase “of unsound mind,” and held in the third paragraph of the syllabus that:
 

 “Where a plaintiff claims to have been of unsound mind at the time a causé of action accrues, so as to suspend the statute of limitations, which claim is denied by the defendant, plaintiff has the burden of proving that he was suffering from some species of mental deficiency or derangement, so as to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice
 
 *
 
 # #
 

 The
 
 Bowman case
 
 construed Section 11229, General Code, and the plaintiff in error herein claims the tolling of the statute owing to disability, under Section 12270, General Code. We hence proceed to inquire whether the doctrine of the
 
 Bowman case
 
 applies td Section 12270.
 

 
 *305
 
 Section 10213, General Code, was first enacted in 1880, and appears in the Revised Statutes as Section 4947. It was a defining statute, and provided that in the interpretation of part 3 of the revision, unless the context showed that another sense was intended, the words “ ‘insane’ and ‘lunatic’ include every species of mental deficiency and derangement.”
 

 The measure appeared in the same form in the Revised Statutes of 1884 and of 1886. In the revision of 1886, 83 Ohio Laws, 74,' the section was amended by substituting the words “of unsound mind” for “insane and lunatic,’’.and the words “of unsound mind” have been carried ever since in the statute.
 

 In the Code of Civil Procedure, 51 Ohio Laws, 59, 60, the right of action for the recovery of real property and for actions other than the recovery of real property was saved to persons who might he “insane,” while the right to commence proceedings in error under Section 523 of the same Civil Code, 51 Ohio Laws, 148 (now Section 12270, General Code), ■was saved to persons “of unsound mind,” within three years exclusive of the time of such disability; that is to say, the enactment from which Section 12270 is derived originally used the words “of unsound mind” instead of “insane,” and the phrase was written in that form throughout succeeding revisions, including the revision of 1886, contained in 83 Ohio Laws, 74, 75.
 

 The history of Section 11229 shows that it was formerly Section 4986, Revised Statutes, and was found in 51 Ohio Laws, 57, as Section 19 of the Code of Civil Procedure of 1853. The section read as follows:
 

 
 *306
 
 “If a person, entitled to bring any action mentioned in this chapter, except for penalty, or forfeiture, be, at the time the cause of action accrued, within the age of twenty-one years, a married woman, insane, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this chapter, after such disability shall be removed.”
 

 It will be observed that at that time the phrase was not “of unsound mind,” but was “insane.” In 83 Ohio Laws, 74, the words “of unsound mind” were substituted for the word “insane,” in this section, and in this particular form the section has remained the same down to the present time. Since the words “of unsound mind” were substituted for the word “insane” both in Section 4947, Revised Statutes, now Section 10213, General Code, and in Section 4986, Revised Statutes, now Section 11229, General Code, and since the words “of unsound mind” were always used in Section 6723, Revised Statutes, which now is Section 12270, General Code, it is plain that the Legislature intended by the change of phrase to ingraft the same construction upon all three sections with reference to disability growing out of mental unsoundness; that is the Legislature deliberately changed Section 4947, Revised Statutes, and Section 4986, Revised Statutes, to bring them into harmony with Section 6723, Revised Statutes. This being the case, it is evident that the Legislature intended the phrase “of unsound mind” in Section 12270 to bear exactly the same construction as the phrase in Section 11229, and hence the rule of
 
 Bowman
 
 v.
 
 Lemon, supra,
 
 applies to this controversy.
 

 
 *307
 
 We therefore proceed to consider whether Mrs. Schnopp upon May 29, 1929, was suffering from some species of mental deficiency or derangement so as to be unable to look into her affairs, properly consult with counsel, prepare and present her case, and assert and protect her rights in a court of justice. In doing so we do not weigh the evidence contained in the record. In our judgment there is no conflict of the evidence upon the point of Mrs. Schnopp’s unsoundness of mind during the time in question. Upon this issue of fact the testimony is uncontroverted. One attorney testified that on January 22, 1929, Mrs. Schnopp “acted as though she had an obsession, an insane delusion, ’ ’ and testified that he formed an opinion as to her mental condition at that time; that insofar as her litigation was concerned she had an insane delusion or obsession. In answer to the question, “Did you think it was possible for you at this time to conduct a conversation intelligently with her in regard to her case?” he answered, “No.”
 

 Another attorney testified that in June, 1929, “she' couldn’t even understand then what the facts were, what was actually happening to her * * * she couldn’t realize, or understand, just what the situation was at all.” This attorney testified that “I would say she was not in position to handle her own affairs or consult regarding them, or reason about them at all. *
 
 * *
 
 I would say that she was of unsound mind, or at least she was obsessed with ideas that were wrong. * * * She could not be made to think.”
 

 Another attorney testified that shortly before the motion was filed for rehearing, that is, shortly be
 
 *308
 
 fore July 30,1929, “I couldn’t understand from her anything in regard to her case, or the situation of affairs. * * * I was not able to get any facts from her by which I could get an intelligent understanding of the case at all * * * # she seemed to be wholly unable to understand anything that I said to her * * * I was not able at atíy time to converse intelligently with her about it. ’ ’
 

 In an effort to controvert this testimony, counsel on behalf of the Union Trust Company offered in evidence a page of the bill of exceptions showing that Mrs. Schnopp had testified in the case as follows:
 

 “ ‘Question: You are Emma Schnopp, the defendant in this case? A. Yes, sir. Q. I will ask you,’— and this is the examination here by Mr. McCarron , — ‘I will ask you if you had any knowledge of the fact that there had been an appraisement and election made, an appraisement made by the Union Trust Company,’ it probably should have been election, ‘to take this property, until you received this letter of June 3rd from Mr. "Wickham, whether you knew anything about it until you got that letter? A. No, I didn’t know anything about it before until receiving that letter that I should move in 30 days. Q. You may state whether it was your wish to take the property at the appraised value When you learned that it has been appraised at $11,000.00? A. That is what they say, what I found out from the letter. Q. No, I am asking you whether you wanted to take it at the appraisement, whether it was your desire to take it at the appraisement ? A. Yes, I want to keep my property.’ ”
 

 Mrs. Schnopp did not herself testify before the Court of Appeals.
 

 
 *309
 
 A witness was also introduced who testified that he had some conversation with Mrs. Schnopp with reference to renting a room at her house, which included various discussions over the rates of her rooms. This is the entire testimony offered to controvert the fact asserted by the guardian that upon May 29, 1929, Mrs. Schnopp could not understand her case, could not properly consult with counsel, nor protect her rights in court. In our view, this testimony does not bear upon that question.
 

 As held in
 
 Cathcart
 
 v.
 
 Stewart,
 
 144 S. C., 252, 142 S. E., 498, a man may be insane on one subject, but capable of transacting business on all others; the question in any case being not merely whether he is insane at the time of the questioned transaction, but whether he was so insane as to be incapable of doing the particular act with reason and understanding.
 

 The question in this case was not whether Mrs. Schnopp was mentally competent to rent rooms. The question was whether she was mentally competent within the purview of the
 
 Bowman case, supra,
 
 to be able to look into her legal affairs, properly consult with counsel, prepare and present her case and assert and protect her rights in a court of justice. Upon that point there is no controversy in the record. All of the testimony upon that point is to the effect that within the definition given, Mrs. Schnopp was not mentally competent during the period in question.
 

 The phrase “of unsound mind” as defined in the
 
 Bowman case
 
 and as applied both to Section 12270 and Section 11229, General Code, is a broader and more inclusive phrase than the word “insane.” To
 
 *310
 
 come within the privilege of the statute in this regard does not require proof of positive insanity. The uncontroverted testimony of Mrs. Schnopp’s attorneys, coupled with the appointment of a guardian during the proceedings, in our judgment establishes the fact that she was of unsound mind from January 22,1929, on; that the statute with reference to the time of instituting error proceedings did not run against her; that her petition in error was filed in time; and that the court of common pleas, under the facts of this record, should have vacated the order of May 29, 1929.
 

 Judgment reversed and cause remanded.
 

 Marshall,, C. J., Jones, Kinkade and Robinson, JJ.', concur.