IN RE GUARDIANSHIP OF BERTHA KAPPEL.

No. 47832.

(Reported in 47 N.W.2d 825)

1022

May 8, 1951.

Rehearing Denied September 21, 1951.

Carroll H. Wild, of Allison, and F. J. McGreevy, of Ackley, for appellants.

Uhlenhopp & Uhlenhopp, of Hampton, for appellees.

Thompson, J.—On June 14, 1950, Annie Mehmen and others filed in the district court of Butler County, Iowa, a petition asking the appointment of a guardian for the property of Bertha Kappel, under the provisions of section 670.2, Code of 1950. It was alleged, in effect, that Bertha Kappel was a person of unsound mind. The petitioners were daughters of Bertha Kappel. An appearance was made for her, and answer filed. On July 15, 1950, Bertha Kappel presented in person and by counsel to M. H. Kepler, one of the judges of the district court for the Twelfth Judicial District, in which Butler County is located, an application asking the appointment of a guardian under section 670.5, the so-called "voluntary" guardian statute. Judge Kepler thereupon made an order reciting the age of the applicant, seventy-six years; that she had appeared before him in chambers at Northwood, Iowa; that he had observed her and had considered and investigated the matter; that he found Bertha Kappel was not an idiot or a lunatic but was competent to make the application, and that she was a proper person to have such guardian appointed. He thereupon appointed E. O. Wickham as her guardian, finding him to be a fit and proper person and in every way qualified. The order closes with this sentence: "And it is found expressly that the prayer of said petition should be granted, it being for applicant's best interests."

1024

Thereupon the answer filed for Bertha Kappel in Mehmen et al. v. Kappel, above referred to, was amended by alleging the appointment of the guardian under section 670.5 as a complete defense to the petition for a guardian under 670.2. On July 27, 1950, the petitioners Annie Mehmen and the others in the first case filed their application to set aside the appointment of the guardian under section 670.5, alleging the prior pendency of the action brought by them, that Bertha Kappel was not capable of understanding the nature of her application under 670.5, but was induced to sign it by two sons, who were in a position to take advantage of her, and charging that their reason for procuring the appointment of E. O. Wickham was to get a guardian "who would employ their counsel and would favor them all he could." By an amendment filed on August 1, 1950, they alleged that at the time of the appointment of the guardian Bertha Kappel was a lunatic, and that at that time the issues were made up and the first case ready for trial. By a second amendment filed on August 7, 1950, the same petitioners charged that the two sons and their attorney formed a plan to induce Bertha Kappel to sign an instrument which she was incapable of understanding, and the signature to which was therefore not her genuine signature; that these sons had had business dealings with their mother which would require evidence, and that they were interested in preventing an adjudication of her mental incompetency, so that they would not be excluded from telling of talks and transactions with her. It was further alleged that the guardian appointed was a relative by marriage of the attorney procuring the appointment and had already undertaken to be partial to the sons as shown by a report on file.

It should be said here that the amendment to application to set aside the appointment does not specify in what way the guardian's report was partial to the sons, or unfair to the daughters. The reference to it is therefore, of course, a mere conclusion. It is also to be noted that there is no showing, other than the claim made in the application and amendment, that the attorneys who appeared for Bertha Kappel in procuring the appointment and in subsequent proceedings in the trial court and in this appeal represented the sons. The latter appear here by other counsel.

A third amendment to the application to set aside appointment, filed on August 14, 1950, alleged that the sons now claim an interest in certain personal property standing in the name of Bertha Kappel, valued in excess of ten thousand dollars; that they have filed a claim involving property of the value of many thousands of dollars; and the charge that the application was not in fact the application of Bertha Kappel but of her sons is repeated.

The application to set aside the appointment and each of the amendments thereto were attacked by Bertha Kappel by motions to strike, in which the guardian joined. The material and important grounds of the motions may be summarized thus: 1. That the allegations of the application and amendments are irrelevant, incompetent and immaterial; 2, the fact that an action was pending under section 670.2 would not bar Bertha Kappel from asking for the appointment of a guardian for herself under section 670.5; 3, it appears from the application that a guardian has been appointed and is now acting, and there is no reason why another guardian should be appointed; 4, that there is no sufficient allegation that E. O. Wickham is not a proper guardian, or that his appointment is not for the best interest of Bertha Kappel, as the court specifically found in making the appointment; 5, that if the guardian appointed does not properly and fairly perform his duties he can be removed by the probate court under whose jurisdiction and control he is at all times; 6, that the attack upon the appointment is a collateral one, and is made by persons having no legal standing to make it, the ward being the sole person concerned; and 7, that much of the application and amendments thereto consist of opinions and conclusions of the pleader.

Upon hearing of the motions to strike, counsel for applicants asked permission to introduce evidence upon the issues involved, particularly that of the sanity or soundness of mind of Bertha Kappel. This request was properly refused by the court since the questions were purely legal ones and the sufficiency of the application as amended could not be aided or detracted from by evidence. The court sustained the motions to strike, substantially upon the grounds above set forth; and so we have this appeal. We shall hereafter refer to the applicants, Annie Mehmen

et al., as plaintiffs, and Bertha Kappel and the guardian, E. O. Wickham, as defendants.

I. Plaintiffs assign but one error relied upon for reversal; that the court was in error in sustaining the motions to strike the application to set aside appointment of guardian, and amendments. It is their contention that they should have been permitted to proceed with their then pending action in which, by so-called "adversary" proceedings, they sought to show the mental unsoundness of their mother, the defendant Bertha Kappel. Unless we are to overrule the definite and well-considered holding of this court in Anderson v. Schwitzer, 236 Iowa 765, 20 N.W.2d 67, and much of the pronouncement and reasoning of Neidermyer v. Neidermyer, 237 Iowa 685, 22 N.W.2d 346, we must agree with the ruling of the trial court. We feel that the holdings in these cases are sound, that they have become understood as the proper interpretation of the law of the state, and that there is no reason, either in logic or practice, why they should be changed.

We held, in Anderson v. Schwitzer, supra, that the powers and duties of a guardian are the same, whether appointed under the provisions of section 670.2 or section 670.5. In this case the appeal was likewise from an order and judgment sustaining a motion. We held that the motion—to dismiss—was properly sustained. We said, at page 771 of 236 Iowa, page 70 of 20 N.W.2d:

"Count 2 of the petition as amended alleges that the 1941 order is void because defendant was a lunatic and therefore could not petition for a guardian. * * *

"Since the petition alleges that defendant was a lunatic and he was therefore a proper subject of guardianship at the time the guardians were appointed, and that is still his condition, it would seem to be of no consequence that defendant was a lunatic in 1941, in view of our conclusion in Division I that the existing guardianship has the same legal effect as if the appointment had been made under section 12614. The substance of plaintiffs' contention is that a guardian should have been appointed under 12614. At least, plaintiffs now seek such appointment. Under the pleaded facts, it seems to us not material at this time that the appointment was under 12617 rather than 12614."

▉ The thought there expressed is that, a guardian having been appointed with powers and duties identical no matter under which statute the proceeding was brought, and such guardian being at all times under the direction and control of the court, it is immaterial under which section his appointment was made.

▉ But plaintiffs say that it is important here that their action was first brought; and they seek to distinguish Anderson v. Schwitzer on that ground. It is a distinction without a difference. In Neidermyer v. Neidermyer, supra, we had a case where the petition under section 670.2 was filed first. The trial court thought that he must therefore consider it first, and could not determine the application under 670.5 until he had done so. This court pointed out the fallacy of such reasoning when it said, at page 687 of 237 Iowa, page 347 of 22 N.W.2d:

"The doctrine of Anderson v. Schwitzer is important here. Since in both kinds of proceedings guardianship with the same powers and duties is sought there should be no conflict of interest or of jurisdiction. We have referred to the proceeding upon plaintiff's petition as 'in a sense' adversary. It is such only in form. There are in fact no adverse interests to be determined. Whether the proceeding be upon the ward's own initiative or upon the petition of another the sole interested party is the one over whose property guardianship is sought. * * * Code section 12617 expressly makes the 'best interest of said applicant' paramount in proceedings under it.

"*It follows that the trial court was in error in assuming that because the proceedings upon plaintiff's petition were first begun and were pending when defendant filed her application the latter must be denied. The first inquiry should have been to determine in the ward's best interest whether trial was necessary upon plaintiff's petition; in other words, to determine first whether appointment might not properly be made upon defendant's voluntary application.*" (Italics supplied.)

It is true that in the Neidermyer case we reviewed the evidence, and held that there was no showing of mental unsoundness; but the quotations set out above are directly in point upon the question which plaintiffs assert here, that the court could not

consider the "voluntary" application until the "involuntary" action had been contested to the bitter end. Further language from the Neidermyer case is in point here, page 693 of 237 Iowa, page 350 of 22 N.W.2d:

"Notwithstanding some things said in argument we cannot view this as a contest between expectant heirs and possible testamentary beneficiaries. We assume the original proceeding was brought by plaintiff, and his sister in good faith for their mother's best interest. That interest will be fully served by the appointment of a suitable guardian upon her own application. *Therefore, no legitimate purpose requires further proceedings to ascertain her mental status. In fact, such further proceedings might be found to be contrary to her best interests.*" (Italics supplied.)

The result reached here is the same, with one exception to which reference will be made later, as if Bertha Kappel had not contested the action brought by plaintiffs. Before the court could have appointed a guardian, even upon her default, he must have satisfied himself of the propriety of such an action; the need for a guardian. Then, having reached that conclusion, he must have appointed a proper person as guardian. The record here shows that the court did those things, upon Bertha Kappel's application. He observed her, determined that a guardian was proper and that it would be for her best interests that one be appointed. The guardian he named is charged with being the choice of the sons; but we must assume that he was the choice of the judge making the appointment. No fact is stated to show that he is, or will be, an improper guardian, except that he is related by marriage to the attorney appearing for Bertha Kappel. The closeness of the tie is not given, and we hold that, in itself, it is entirely insufficient. Of course, his acts will at all times be under the control and direction of the court, and plaintiffs will have the opportunity of scrutinizing them as closely as they desire.

■ There is no question of jurisdiction involved. The record is not clear that plaintiffs' action was brought at law; but, assuming that it was, while the appointment of the guardian was made in probate, the fact remains that the district court embraces and includes all branches. We have held repeatedly that it is always

the same court, whether sitting in law, equity or probate. Cleghorn v. Benjamin, 239 Iowa 455, 459, 31 N.W.2d 887, 889; In re Guardianship of Damon, 238 Iowa 570, 573, 28 N.W.2d 48, 49. Many other authorities for this proposition are cited in these two cases.

The one manner in which the result reached differs from that which might have been achieved by following the procedure which plaintiffs wished is pointed out by them as lying in the effect an adjudication of insanity against their mother might have upon the course of possible, perhaps projected, future litigation. It is charged that the two sons have had business dealings with their mother; that they have filed claims against the guardianship; and that several thousand dollars in property values are involved. Pursuing this line of thought, plaintiffs say that if an adjudication of insanity were had, the sons, their brothers, would not be able to testify as to "talks and transactions" with Bertha Kappel. In these allegations appears the ugly outline of the family dispute which lies at the basis of most controversies similar to this. We are well-satisfied that the rule which we laid down in Anderson v. Schwitzer, supra, and are following here is a much kinder one for the aged parent in these circumstances than one which would permit his children to drag him through a trial whose purpose would be to prove his insanity as a matter of judicial record. The question of sanity or insanity is a collateral matter, and we cannot approve of a practice which would compel the trial of petitions in guardianships for the purpose of obtaining a finding of mental unsoundness to be used in the course of future litigation.

Nor would such an adjudication serve the desired purpose. We set out here sections 670.2 and 670.5, Code of 1950:

"670.2 Petition—appointment. When a petition, verified by affidavit, is presented to the district court that any inhabitant of the county is:

"1. An idiot, lunatic, or person of unsound mind; or

"2. A habitual drunkard, incapable of managing his affairs; or

"3. A spendthrift who is squandering his property;
and the allegations of the petition are satisfactorily proved upon

the trial, the court may appoint a guardian of the property of such person."

"670.5 Party may apply for guardianship. Any person, other than an idiot or lunatic, may, upon his own application, by verified petition, have a guardian appointed for his person or property, or both, if, in the opinion of the district court or judge to whom the petition is presented, said appointment would inure to the best interest of said applicant."

It will be noted that paragraph 1 of section 670.2 refers to "An idiot, lunatic, or person of unsound mind;" while section 670.5 provides that "Any person, other than an idiot or lunatic" may apply for guardianship. Section 670.2 was originally section 3219, Code of 1897; while section 670.5 was not enacted until 1923, by the Fortieth General Assembly. The legislature had before it the provisions of the present section 670.2 when it enacted section 670.5, and it must therefore be assumed to have acted deliberately in omitting the class of persons of "unsound mind" from the category of those who might not apply under section 670.5. There are cases which hold that the terms "insanity" and "unsoundness of mind" are synonymous; but there are many others which distinguish them. Lowe v. Union Trust Co., 124 Ohio St. 302, 178 N.E. 255, 258; Thompson v. Thompson, 21 Barb., N. Y., 107, 128. This court has passed upon the question in Seerley, guardian v. Sater, 68 Iowa 375, 376, 27 N.W. 262, 263, where we said:

"A person of unsound mind is one who is incapable of transacting the particular business in hand. *He need not necessarily be an insane or distracted person,* and may be capable of transacting some kinds of business, and yet be of unsound mind, and incapable of transacting business of magnitude, or of at least some degree of intricacy. He may be capable of understanding his rights as to some transactions and not others." (Italics supplied.)

We quoted this with approval and followed it in Garretson v. Hubbard, 110 Iowa 7, 9, 81 N.W. 174.

It seems clear that the legislature, in enacting what is now section 670.5, intentionally omitted those of unsound mind as defined in Seerley v. Sater, supra, from the class who might not

apply under said section. We touched upon this question, but did not decide it, in Neidermyer v. Neidermyer, supra. We now hold that an appointment of a guardian under section 670.5 is not necessarily an adjudication of mental competency of the ward, since those of unsound mind may be entitled to the benefits of the statute.

It is true that the petition in the action brought by Annie Mehmen et al. is not in the record before us in this case. But we have the statement of their counsel, in appellants' brief and argument, that "thinking to soften the pleadings they alleged in mild language that because of her age and mental condition she was unable to manage her property and did not recognize her own children." Here Schultz v. Gay, 207 Iowa 738, 739, 223 N.W. 495, 496, is much in point. We said:

"It is the claim of appellee that John H. Schultz is, by reason of advanced years and failing memory, incompetent to manage his business. Without going into details as to the evidence, we deem it sufficient to say that the trial court found that he was incompetent to conduct and manage the same, and with this finding we fully agree. * * * He is, however, neither an idiot nor a lunatic, but simply incapacitated from transacting business, for the reasons stated. He therefore had the right to apply for the appointment of a guardian for himself."

Here, it is significant that, at the time Bertha Kappel filed her application for appointment of a guardian for herself, and when the appointment was made, there was nothing in plaintiffs' petition in the other suit, the "involuntary proceedings", which negatived her right to proceed under section 670.5. It was not at that time charged that she was either a lunatic or an idiot; the allegations were very similar to the facts found in Schultz v. Gay, supra, and certainly amounted to no more than an assertion that she was of unsound mind to the degree that she could not manage her property. Measured by plaintiffs' own petition against her, she was entitled to ask the appointment of a guardian for herself.

In view of our holdings set forth above we do not find it necessary to determine whether plaintiffs' attack herein is a col-

lateral one, or whether they had any standing to challenge the appointment. It is sufficient if the court's ruling in sustaining the motions to strike was right upon any of the grounds alleged.

 It is appropriate to say that, under similar circumstances, trial courts should exercise caution in making appointments under section 670.5. They should make certain, in all cases, of course, that the applicant is within the permitted class; that is, that he is not an idiot or a lunatic. If this precaution is used, the statute is a beneficent one. The record shows that the trial court satisfied himself by observation and talking to Bertha Kappel that she was a proper applicant. We find no error.—Affirmed.

WENNERSTRUM, C.J., and SMITH, OLIVER, GARFIELD, and MULRONEY, JJ., concur.

HAYS, J., dissents.

HAYS, J. (dissenting)—I respectfully dissent. This case being a companion to No. 47833 (Mehmen v. Kappel, 242 Iowa 1032, 47 N.W.2d 832) the dissent filed therein fully expresses my reasons which I feel are likewise determinative of the instant case. I would reverse.