IN RE ESTATE OF CHRISTMAN: LEDLEY, APPELLEE, *v.* CHRISTMAN, ADMR., APPELLANT.

(No. 1506—Decided August 4, 1955.)

Messrs. *Scanlon & Berger* and *Mr. Clarence U. Ahl,* for appellee.

Messrs. *Myers & Spurlock* and *Mr. Edward Ryan,* for appellant.

YOUNGER, J. This is an appeal on questions of law from a judgment of the Probate Court of Crawford County granting leave to the claimant, Damon E. Ledley, appellee herein, to present his belated claim for damages against the administrator of the estate of William S. Christman.

On February 6, 1952, the claimant and the decedent were involved in an automobile accident in which the claimant sustained serious injuries and the decedent died. The accident occurred around 10 o'clock in the morning and the claimant and the decedent were both taken to the same hospital in Galion, where the decedent died at 5:40 p. m. the same day. The

claimant was confined to the hospital from the date of the accident until February 20, 1952, a period of 14 days. On February 13, 1952, the last will and testament of the decedent was filed, a hearing was had, the will admitted to probate and the administrator with the will annexed was appointed. The four-month period within which a claimant was required to present a claim expired on June 13, 1952. The claimant failed to present his claim within such period. On July 9, 1952—twenty-six days after the expiration of the four-month period but within nine months from the date of the appointment of the administrator—the claimant filed his petition in the Probate Court for authority to present his claim against the administrator. On June 10, 1954, the Probate Court entered judgment in favor of the claimant, and from that judgment this appeal is taken.

The petition alleges that the claimant did not have actual notice of the appointment of the administrator until after the statutory time for the presentation of claims had expired and that he was under legal disability during the major portion of the statutory period provided by law for the presentation of claims to administrators.

So far as applicable here, Section 2117.07, Revised Code, provides:

"Anyone having a claim against an estate who fails to present his claim to the executor or administrator within the time prescribed by law may file a petition in the Probate Court for authority to present his claim after the expiration of such time. * * * The court may authorize such claimant to present his claim to the executor or administrator if, on the hearing, the court finds as follows:

"(A) That the claimant did not have actual notice of the decedent's death or of the appointment of the executor or administrator in sufficient time to present his claim within the period prescribed by Section 2117.06 of the Revised Code;

"* * *

"(C) That the claimant was subject to any legal disability during such period or any part thereof."

It is alleged by the claimant that he had no actual notice of the appointment of the administrator until after June 13; that on or about June 17 he was advised by a representative of the

Farm Bureau Insurance Company, with whom he had arranged a meeting, that as the insurer of the decedent's automobile the company was not concerned with his claim, which could not be honored since the statutory period for the presentation of claims against the decedent's estate had run and since he had not filed a claim within such period; and that he immediately consulted his attorneys and was advised on June 20 that they had checked the records and found that the administrator had been appointed and the four months had expired. He claims further that since he is not a resident of Crawford County, but is a resident of Mt. Gilead in Morrow County, he did not see any newspaper notice or account of any appointment. The administrator, however, testified that his employment was that of a pick-up man for a dry-cleaning establishment and that during the Easter season (specific dates not established) he paid a visit to the claimant and in the course of the conversation told him that he was quite busy due to the additional work in his line of business at that season and looking after his father's estate as administrator. However, giving the evidence the interpretation most favorable to the claimant, we find that he had no actual notice of the appointment.

The evidence is undisputed that for several days following the claimant's admission to the hospital his wife spent considerable time with him; that before the funeral of the decedent the claimant's wife left the hospital and paid a visit to the funeral home to which the body had been removed; and that on the witness stand the claimant freely admitted that his wife informed him on February 7 that Mr. Christman had died.

In our opinion the actual knowledge of the decedent's death, acquired by claimant on the day following the death, disposes of the first ground set forth in his petition.

The Supreme Court, in the case of *In re Estate of Marrs,* 158 Ohio St., 95, 107 N. E. (2d), 148, has held:

"2. The disjunctive conjunction, 'or,' is used in Section 10509-134, General Code [Section 2117.07, Revised Code], in its ordinary sense and meaning, and where upon hearing of the petition for authority to file a belated claim the evidence discloses that claimant actually knew of decedent's death and his place of residence shortly after the death occurred and that in

the exercise of reasonable diligence the claimant could have learned of the appointment of an administrator and thereafter had a fair opportunity to present his claim within the four months prescribed by Section 10509-112, General Code, the court is chargeable with no error or abuse of discretion in denying claimant authority to present such claim.''

At page 100, the court says:

''By placing the alternative in the statute, actual notice of either the death or the appointment is sufficient to place a claimant under the duty of filing his claim within the four months, providing the notice comes soon enough to enable him to do so.''

We next consider whether ''the claimant was subject to any legal disability during such period or any part thereof,'' as used in Paragraph (C) of Section 2117.07, Revised Code, and as claimed by the claimant in the second branch of his petition.

''Legal disability'' is defined in Section 2131.02, Revised Code, as follows:

'' 'Legal disability' as used in Chapters * * * 2117 * * * of the Revised Code includes the following:

''(A) Persons under the age of twenty-one years;

''(B) Persons of unsound mind;

''(C) Persons in captivity;

''(D) Persons under guardianship of the person and estate, or either.''

A careful reading of the evidence before the Probate Court immediately eliminates paragraphs (A), (C), and (D) of this definition, and, if the claimant is to prevail at all, it must be by virtue of paragraph (B), ''Persons of unsound mind.''

''Unsound mind'' is defined by statute, as follows:

Section 1.02, Revised Code, General definitions.

''As used in the Revised Code, unless the context otherwise requires:

''* * *

''(E) 'Of unsound mind' includes all forms of mental deficiency or derangement.''

The Supreme Court, in the case of *Bowman* v. *Lemon,* 115 Ohio St., 326, 154 N. E., 317, has set forth the elements of ''unsound mind'' as follows:

"3. Where a plaintiff claims to have been of unsound mind at the time a cause of action accrues, so as to suspend the statute of limitations, which claim is denied by the defendant, plaintiff has the burden of proving that he was suffering from some species of mental deficiency or derangement, so as to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice * * *."

This statement was approved and followed in the case of *Lowe, Gdn.,* v. *Union Trust Co.,* 124 Ohio St., 302, 178 N. E., 255, and the court stated, at page 309:

"The phrase 'of unsound mind' as defined in the *Bowman case* * * * is a broader and more inclusive phrase than the word 'insane.' To come within the privilege of the statute in this regard does not require proof of positive insanity."

The testimony of the claimant's attending physician was that when the claimant was first treated at the hospital upon arrival, he was suffering from a severe bruise and laceration of the forehead, cerebral concussion, fractured sternum, sprain in the dorsal region of the back, bruised knees, and nerve injury to the supraorbital nerve over the right eye, and that the patient was nervous, incoherent and confused; that the confusion of February 6 had cleared up on February 7; that he continually improved and his mind was clear after three or four days; that he saw claimant every day in the hospital until he was discharged on February 20; that he did not see him again until March 8; and that between March 8 and April 19 claimant came to his office in Galion, a distance of 14 miles from Mt. Gilead, 15 or 20 times when he treated him for pain over the right eye and forehead with sedatives and hypodermic injections. On cross-examination the doctor admitted that the claimant understood the questions asked of him in the hospital; that he was a rugged individual and made a satisfactory recovery; that he did not know how efficiently claimant would be able to transact business matters, as he thought pain would interfere with concentration and the thinking process; and he admitted that on February 10 his patient would have comprehended a bill for his utilities, if one had been presented, a house-painting job, court subpoena or newspaper article; and

that when he last saw his patient, on April 19, his general condition was good.

Another physician testified that he treated claimant on June 11, 12 and 14 for an acute low back strain in the lumbar vertebra and injected novocaine in the muscles of the back; that the strain was of recent origin, probably within 24 hours—or on June 10; that at that time it would have been possible for claimant to go about and transact business, but he advised him to rest; and that the claimant was alert in all respects and mentally normal.

The testimony of the claimant was that he realized on February 7 that he was in a hospital; that during the time he was in the hospital he had severe aches and pains, could not use his arms to lift anything, and was fed by the nurses part of the time; that he was confined to his room except for the last day, and spent practically all the time in bed, sitting up in a chair only occasionally; that he went home on February 20, and spent about a week in bed and in a chair; that he had dizzy spells, was hazy, and it was difficult for him to walk; that on February 28 a friend of his picked him up in his automobile and drove him to Crestline where he met with an adjuster for the insurance company which carried the insurance on his car, negotiated a settlement for the damage to his car, signed a release, accepted a check which he took to a bank in Crestline, and paid off the chattel mortgage on the car, received the balance in cash, and returned home; that he made 15 or 20 trips to Galion, a distance of 15 miles, with another friend of his to visit his doctor and receive treatments; that after April 19 he saw a doctor in his home town for about a month, his difficulty at that time being "a bad back"; that he attempted to go back to work the latter part of May but could not stand to be on his feet or drive a car; that from early in June until June 17 he spent a couple of weeks in Hilliards, Ohio, broadcasting over the public address system the horse races held there every evening, but that during the daytime he spent considerable time lying on a heating pad because of his back; and that from February 20 until June he was bothered with his head, back and chest; could not move around like he should or spend much time on his feet, was nervous and weak, and had a headache and a sharp pain over his right eye two or three times a day.

The testimony of the friends of claimant who drove him on his trips to Crestline and Galion was that whereas before the accident he was jovial and conversational on those trips he was quiet and did not care to talk.

The testimony therefore shows, in our opinion, that the only time the claimant was confused was for a day or so immediately after the accident on February 6—but this was before the appointment of the administrator; and that after the appointment of the administrator on February 13 the most that can be claimed for the claimant was that he continued to suffer physically from the effects of the injuries and that even with such physical suffering he was able to go to the bank in Crestline and transact some important business successfully, make frequent trips to his physician in Galion, attempt to go back to work, and go to Hilliards, before the time expired for him to file his claim with the administrator, to broadcast the horse races which required skill and ability.

The evidence shows that for the four-month period following the appointment of the administrator, the claimant was able to and did go about and look into his business and affairs, and we therefore hold that during such period the claimant was not under legal disability.

We are not unmindful of the provisions of Section 1.11, Revised Code, which require that remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. However, we are bound by the statutory provisions and definitions which, in this case, require evidence of the particular kind of legal disability known as unsoundness of mind. Physical aches and pains, headaches, dizziness and inability to walk around or drive an automobile are distracting and cut down efficiency, but they have not as yet been made legal excuses for failure to comply with the statutory provisions here under consideration. To consult with legal counsel requires no greater soundness of mind than is required to consult with an insurance adjuster, a banker or a physician.

In our opinion the case of *In re Estate of Price,* 87 Ohio App., 23, 93 N. E. (2d), 769, is readily distinguished from the case under consideration here.

In the *Price case* the accident happened on May 9 and the

administratrix was appointed on May 20, so that the four-month period expired on September 20. The claimant was confined to the hospital until October 3. The physician attending the claimant while in the hospital testified that he had a basilar skull fracture; that at the time he entered the hospital he was bleeding from both ears; that the femur of his right leg was broken in 18 or 20 pieces; that he was suffering from shock; that he was mentally confused; that for a period of three or four weeks after the accident his senses were not clear and there was an element of mental confusion; and that he was kept under sedation because of the severe pain. The physician testified further that for a period of six to eight weeks the claimant suffered from mental confusion; that he was kept under sedatives until the month of September; and that for a period of three or four weeks he was administered hypnotic drugs, the portions of which were gradually reduced.

The Probate Court was, therefore, in error in permitting the claimant to file his claim with the administrator, as there is no evidence presented of legal disability or unsoundness of mind of the claimant during the four-month period following the appointment of the administrator.

Judgment reversed and cause remanded to Probate Court, with instructions to dismiss claimant's petition for leave to file his claim.

*Judgment reversed.*

QUATMAN, P. J., and MIDDLETON, J., concur.