**CARTER, Plaintiff, v. WOOSTER (City), Defendant.**

Common Pleas Court, Wayne County.

No. 39346.   Decided July 18, 1958.

## OPINION

By MILLER, J.

This matter is now before the Court on the Motion of the Defendant to strike the Second Amended Petition of the Plaintiff from the records in this cause on the ground that said second Amended Petition is a sham pleading containing therein an allegation false and untrue so far as the Statute of Limitations is concerned, even though said allegation would appear on its face to be a valid allegation in a Petition of this kind. Defendant also claims that such pleading is frivolous, without merit, has not been filed in good faith, and has been filed for the purpose of harrassing the Defendant.

A review of the pleadings filed in this case to date is made herein as part of the Court's decision on this Motion.

On June 29, 1956 the Plaintiff filed a Petition against the Board of Governors of Wooster Community Hospital, Harold Parks, as Administrator of Wooster Community Hospital and the City of Wooster, Ohio, alleging that he had suffered personal injuries as the result of surgery while in said hospital on March 26, 1954 and the resulting treatment and care while he was recovering from the operation performed on his hip at said hospital on March 26, 1954.

There is no allegation in the Plaintiff's first Petition regarding his mental condition or unsoundness of mind in any respect.

To that first Petition the Defendants on August 11, 1956, without raising the question of the proper joinder of Defendants, demurred to the Petition on the ground that the action was not brought within the time limited for the commencement of such actions.

The Court after consideration of extensive Briefs on this question, on December 13, 1956, sustained the Demurrer filed by the Defendants and determined that the Petition was not filed within the period limited by the Statute of Limitations applying to such cases. Plaintiff was granted thirty days leave within which to file an Amended Petition. On January 4, 1957 Plaintiff filed his Amended Petition still making the Board of Governors, the Administrator, and the City of Wooster all parties Defendant. In this Amended Petition in the next to the last paragraph preceding the prayer, then appears the following allegation:

"That following the above described operation and accident, this plaintiff was constantly kept under sedatives and opiates to the extent that his mental reasoning was destroyed, that he was of unsound mind by reason of the fact that he had lost his mental reasoning, which condition continued from the date of the operation until June 29th, 1954."

To this Amended Petition the Defendants on April 3, 1957 filed a Demurrer on the ground of misjoinder of parties Defendant, and the Court upon consideration of oral arguments and Brief filed by Defendants in this particular phase of the case on June 14, 1957, sustained the Demurrer of the Defendants to the Amended Petition of the Plaintiff on the ground that it appears on the face thereof that there is a misjoinder of parties Defendant, and the Plaintiff was granted thirty days leave in which to plead further if he so desired.

On September 30, 1957 the Plaintiff filed his Second Amended Petition in this cause making the City of Wooster alone the Defendant and leaving out the two previously named Defendants, and alleging in his Second Amended Petition facts relating to the Wooster Community Hospital and its existence as a municipal hospital operated by the City of Wooster. The Second Amended Petition contains the same allegation in the next to the last paragraph prior to the prayer thereof as above quoted, and this allegation is the foundation of Defendant's Motion to Strike the Second Amended Petition from the records.

The Plaintiff in this matter claims to the Court, and insists that the Court has no right to consider this Motion in the first instance or to take testimony or evidence regarding the same, it being the contention of the Plaintiff that this is a matter which must be accepted on its face, and the question of the application of the Statutory limitation against this cause of action must be submitted and decided by the Jury under facts presented pursuant to this allegation in the Second Amended Petition. It is the Plaintiff's contention that the Court has no power to consider this matter prior to the trial of this cause to a Jury upon its being duly assigned for trial, and that the Defendant can reach this matter only by Answer.

It is the contention of the Defendant that the Court should and does have the power pursuant to the Decision of the Supreme Court of Ohio in White v. Calhoun, 83 Oh St 401, to go into such a question as this; that it is proper to consider a sham Petition as well as a sham Answer, and that if upon the evidence presented the Court finds that he would have to direct a verdict upon such a Motion for a directed verdict being made during the course of trial, and that the evidence shows clearly and without any question that the Statute of Limitations does apply to this cause, and that the facts leave no doubt that reasonable minds could reach only this one conclusion, then upon such a basis this Court can at this point dispose of this cause on a Motion to Strike the Second Amended Petition as a sham Pleading.

The Court in this case having considered the cases presented and other cases found by additional research by this Court, and particularly the discussion at the beginning of the Case Note on the proposed Summary Judgment Statute for Ohio, beginning on Page 1 of Vol. 19 Ohio State Law Journal published in the Winter of 1958, the Court is of the opinion that he does have the power under the facts presented in this case to consider evidence on this question, and the Court did so determine earlier in this cause and notified counsel that he would hear evidence, and evidence has been presented and heard by the Court on the

Motion to Strike now before the Court. The Plaintiff, although in Court with his counsel at the hearing when evidence was presented refused to present any evidence, standing on his position that the Court has no power to consider this Motion or hear evidence regarding it and must therefore overrule it out of hand.

The Court having determined that it is proper to hear evidence in this cause on the Motion to Strike this Petition as a sham comes now to consider the evidence presented and the merits of the Motion to Strike the Plaintiff's Second Amended Petition from the records. The Supreme Court of Ohio in **White v. Calhoun, 83 Oh St Page 401,** made a Decision which to date has been unreversed, relating to this question of sham pleadings filed in bad faith and without merit. While it is true that the pleading attacked in that Supreme Court case was an Answer, under §2309.70 **R. C.,** the law of Ohio now says:

"Motions to Strike pleadings and papers from the files may be made with or without notice as the Court directs."

Obviously this Motion is made to strike a Pleading, namely, the Plaintiff's Second Amended Petition, and it is made with notice and upon hearing duly held, and upon the opportunity presented to the Plaintiff to present evidence relating to this question, with sufficient opportunity to be prepared thereon and to be present and to present the same. In other words, the Plaintiff has not been denied opportunity in any respect to present his side of this question, the Court having previously determined that he would hear evidence on this Motion. The Supreme Court in White v. Calhoun, gave an illustration as to the kind of evidence that might be properly considered by the Trial Court. Such evidence is present in the case at Bar, namely, in the deposition of the Plaintiff taken as upon Cross-Examination by the Defendant's counsel, and while the Supreme Court Decision did not limit the kind of evidence which might be considered it did give an illustration that is applicable directly to the case before this Court now. The Supreme Court also laid down what seems to be a fair and just rule in relation to these situations, stating as follows:

"Our conclusion is that a Motion to Strike off an Answer believed to be a sham Answer is a proper practice and that the Trial Court has power to entertain, hear and determine such Motion. It may be proper to add, in order to prevent misunderstanding, that the discretion of the Court in such case should be exercised wisely and with discrimination, and such Motion sustained only upon such showing upon the part of the Plaintiff as leaves no question whatever of the truth and conclusiveness of the Plaintiff's evidence. A situation in which there is conflict of evidence upon any material point, or admitting of a rational doubt as to the proper order to be made, should result in the overruling of the Motion."

The Court is of the opinion that the Supreme Court thereby laid down the rule to be followed in deciding Motions attacking a pleading as a sham, and requesting the Court to strike from the record. It appears that the evidence which the Court must take and act upon should not admit of any rational doubt or conflict upon any material point, and if

there is such rational doubt or a conflict upon a material point then the Motion to Strike should be overruled.

Let us now look at the evidence presented to the Court in this case upon which the Plaintiff must rely at the time he would come to trial and be faced with a Motion to direct a verdict on the question of his being barred by the Statute of Limitations.

We have in this case an almost identical situation to that which was before the Supreme Court in White v. Calhoun, supra, namely, the deposition of the Plaintiff which was filed in this cause May 29th, 1957, taken by the Defendant upon Cross-Examination. Said deposition is before the Court along with the Plaintiff's Second Amended Petition and the Motion to Strike now under consideration. The Court has examined this Deposition with great care and can come to no other conclusion but that the Plaintiff was reasonably able to conduct his business during most of the time after the operation which occurred on March 26, 1954. The Deposition shows that he was released from the hospital on May 3rd, 1954, that he went to his home; that he was cared for by his wife, his mother-in-law and a neighbor at various times; that he spent numerous hours in the day at home alone; that he had a telephone beside his bed, and that he called people on that telephone and talked to them while he was at home after May 3rd, 1954; that on May 18th, 1954, he was aware of his condition and called Dr. Foster who was his friend, to come and look at his leg, which Dr. Foster did; that he smoked both at home and in the hospital; that he helped himself to food which was prepared and left for him by his wife; that he visited with his step-son and step-son's wife; that he was aware of the stinking condition that resulted from his having the cast on; that he called Dr. Cebul and that he returned to the hospital on May 18th, 1954; that he was aware of when the cast was removed, that he did suffer considerable pain, "great pain," as he put it, during the removal of the cast. He admits remembering being in a Ward with other patients and talking to those patients, conversing with them, visiting with his wife, visiting with his step-son and daughter-in-law in the hospital. He remembers that the surgical wound and the condition of his leg were medicated and dressed. He remembers that he was given pain pills for pain and that he received pills for pain, that he talked to Dr. Cebul about the pain; that he was worried about a pain under his arm and talked to the doctor about a blood clot; that he was permitted to and did have whiskey, that he had beer and that he had wine in the hospital, and that these things were permitted to him when he asked for them. He remembers discussing with one of the patients in the Ward the fact that his former sister-in-law had been a secretary to that patient and that they told stories and jokes back and forth. There were numerous other things which were asked him which he denies specifically remembering, however, there is no question in the Court's mind that he was aware of what was going on around him; that he knew what his condition was; that he was suffering from pain and that he was receiving medicine for it; that he remembers being taken home in the ambulance and being at home, and that he admits he remembers being returned to the

hospital on May 18, 1954, and the removal of the cast at approximately that time; that he remembers it was done without anesthetic and under local anesthetic, and that he was awake and conscious while the cast was being removed; he remembers being awake and then passing out after the cast was removed, that is fainting; he remembers a window being cut in the second cast and that he had a second cast put on his leg; he remembers Dr. Cebul coming in and dressing his leg a number of times after the first cast was removed and that he talked with Dr. Cebul; he remembers being concerned over possible blood clots in his left leg and the possibility of an operation on it. Reading the whole Deposition of the Plaintiff there can be no doubt that the Plaintiff knew what was going on around him and what the circumstances were, and was aware of who came to see him and to whom he talked, and that the Plaintiff could only testify otherwise in the trial of this case to a Jury at the risk of being guilty of perjury. He states that his wife visited him daily in the hospital and that when she came in they sometimes discussed business matters together; that he was aware of the fact that this operation and the recuperation were an expensive matter and that they needed money and he discussed this with his wife. These things appear particularly on pages 29 and 30 of the Deposition. Taking only this Deposition of the Plaintiff without regard to the hospital charts and the comments of the nurses who took care of him during both times he was in the hospital prior to June 29th, 1954, and the other evidence submitted, and construing it most favorably on the basis that the Plaintiff did suffer considerable and great pain and took pain tablets and pills and medicine for it to relieve him of it over an extended period of time, it is overwhelmingly indicated that the Plaintiff was not of unsound mind nor mentally deranged during this period of time. Plaintiff is relying upon the definition set forth in §1.02 R. C., defining unsound mind, and thereby relying upon the Section of the Code which covers the matter of legal disability relieving him from the running of the Statutes of Limitations. The Supreme Court of Ohio has passed on the elements of unsound mind which toll the running of the Statute of Limitations. They have particularly done this in **Bowman v. Lemon, 115 Oh St 326,** and in **Lowe, Gdn. v. Union Trust Company, 124 Oh St 302,** in which they have said:

"That where a Plaintiff claims to have been of unsound mind at the time a cause of action accrued so as to suspend the Statute of Limitations the Plaintiff has the burden of proving that he was suffering from some species of mental deficiency or derangement so as to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a Court of Justice."

This Court is not unmindful of the provisions of §1.11 R. C., which requires that remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. However, this Court is bound by the Statutory provisions and definitions which require evidence of a particular kind of legal disability known as unsoundness of mind. Physical aches and pains, headaches, dizziness, inability to walk around or drive an

automobile are distracting and cut down efficiency, the taking of medicine and pills for pain following a surgical operation also cut down efficiency and the ability to get around. However, there is no indication that this condition existed to such a degree, taking the Plaintiff's own testimony construed in its most favorable light to him, that he was unable to consult with an attorney or legal counsel regarding his legal status in this matter during the entire period from March 26, 1954 to June 29th, 1954. To consult with legal counsel requires no greater soundness of mind than is required to consult with a banker or a physician, and this Court is of the opinion that this Plaintiff knew what he was doing and what his affairs were about and that he could have properly and effectively consulted with his attorney before June 29th, 1954 for the purpose of assisting and protecting his rights in a Court of Justice.

There is one other very peculiar fact in this record, and that is the fact that according to the allegation in the Plaintiff's Second Amended Petition he recovered his soundness of mind on the exact day two years before the date of filing his first Petition in which nothing was said regarding his unsoundness of mind. This allegation came after a Demurrer based on the Statute of Limitations had been sustained by this Court, as is shown by the record in this case. It seems rather strange to this Court that a man should suddenly recover his legal ability to talk to an attorney on the exact date two years before the date of filing his petition in order to relieve himself from the operation of the Statute of Limitations after it has been called to his attention. In the opinion of this Court people who are mentally deficient or deranged to be defined as persons of unsound mind within the meaning of §1.02 R. C., and the Section relieving an individual from the application of the Statute of Limitations because of such legal disability are not left by themselves for long periods of time to take their own pills and to feed themselves at home without someone present with them. Such persons are not able to talk over the telephone and discuss business matters with their wife or other persons or to call up a doctor and consult him about their condition. These are not indicia of legal disability even though that person may be taking a considerable quantity of sedatives for pain during the time these things occur.

This Court is further of the opinion that in this particular case the method used here by the Defendant, namely a Motion to Strike a Pleading as a sham, even though it attacks a Petition, is authorized by Statute and Supreme Court Decision, and that this matter should be settled prior to the time a Jury is called and seated for trial in this case.

The Court therefore finds that Defendant's Motion to Strike the Second Amended Petition of Plaintiff from the Records is well taken and the same will be sustained. Defendant's attorney shall prepare a proper entry in conformity with this Opinion and grant Plaintiff exceptions.