CARMEN MARÍA TORRES, ETC., ET AL., Plaintiffs and Appellants, *v.* PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellee.

Nos. R-67-312, R-67-358.　　Decided October 24, 1968.

*Héctor Lugo Bougal, Delia M. Auffant,* and *Delia Lugo Bougal* for appellants. *Luis A. Lugo, Jr.,* for appellee.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Carmen María Torres and Iluminado Torres were married on October 20, 1955 and had two children, Jaime Luis and Carmen María. After their marriage and at the time the occurrence which gave rise to this action took place, Iluminado Torres was suffering mental derangement. On January 16, 1965 they were living in a ward in Peñuelas and in a house belonging to them, built in the backyard of Facunda Torres' residence, who was Carmen María Torres' grandmother. Said property was community property. On that day there was a fire in Facunda Torres' house, which extended to the

house of the Torres couple, destroying it completely. On March 18, 1966 Carmen María Torres requested and obtained from the Superior Court, Ponce Part, her designation as guardian *ad litem* of her disabled husband and of her minor children. On the same date, in her capacity of guardian *ad litem* of her husband and children, she filed a complaint against the Water Resources Authority claiming damages for the loss suffered as consequence of the fire.

On September 14, 1967 judgment was rendered in relation to the first cause of action, instituted in favor of the conjugal partnership, dismissing it on the ground of prescription of one year. This decision gave rise to appeal R-67-312.

The case went to trial in relation to the second cause of action claiming the damages suffered by the minor children of the married couple. After plaintiffs' evidence was presented, the court, on defendant's motion, also dismissed it by judgment of October 13, 1967, relying on the fact that plaintiffs had not established the existence of a causal relation between the damages and defendant's action or omission. This second decision gave rise to appeal R-67-358.

Plaintiffs appeal from both judgments, and both appeals have been consolidated to be determined jointly.

*Judgment on the First Cause of Action*
*Appeal R-67-312*

It was alleged in the complaint and it appears from the answer to the interrogatories submitted by defendant, that Iluminado Torres was mentally incompetent since 1959, although he had not been declared as such by any court. There is no controversy as to the fact that the damages to which this cause of action refers were suffered by the conjugal partnership constituted by Torres and his wife.

The controversy centers on whether § 40 of the Code of Civil Procedure (32 L.P.R.A. § 254) is applicable in this case,

defendant-appellee alleging that the aforecited § 40 is not applicable because the conjugal partnership is, in our jurisdiction, an entity separate from the spouses who compose it, said § 40 referring to natural and not to juridic persons. They also allege that when the husband is incapacitated our law automatically transfers to the wife the administration of the community property, and, therefore, upon the wife failing to file the action within a year of the occurrence of the facts, the same had prescribed.

In the first place we must establish whether said § 40 protects a mentally disabled person, although there is no previous judicial declaration of his disability.

We have already considered the case of minors and decided that in case of a minor the period of limitation of actions does not run during his disability, that is, until he attains majority. *Márquez* v. *Superior Court*, 85 P.R.R. 536 (1962). As to the mentally incompetent, in most of the jurisdictions in which the problem has arisen and which have statutes similar to ours, it has been decided that it is not necessary that the person be adjudged insane in a judicial proceeding in order to arrest the period of limitation against him.[1] 34 Am. Jur. 162, § 202; *Browne* v. *Smith*, 205 P.2d 239 (1949); *Hammer* v. *Rosen*, 165 N.E.2d 756 (1960); *Gomillion* v. *State*, 274 N.Y.S.2d 381 (1966). However, at the hearing of a case where, on behalf of a person of unsound mind his incompetency is alleged to suspend the running of the statute of limitation in his favor, it must be

---

[1] Even assuming that a guardian had been appointed to the presumed disabled person, the period of limitation commences to run against him after the removal of the disability. *Appointment of Guardian for Incompetent or for Infant as Affecting Running of Statute of Limitations Against Ward*, 86 A.L.R.2d 965. *Gottesman* v. *Simon*, 337 P.2d 906 (1959); *Whalen* v. *Certain-Teed Products Corp.*, 134 S.E.2d 528 (1963); *Márquez* v. *Superior Court, supra.*

As to the time when the mental disability must have occurred in order that it may arrest the running of the limitation period of the action, see 41 A.L.R.2d 726.

shown that said incompetency is of such a nature as to show him incapable of administrating his own affairs or to comprehend the scope of his legal rights and liabilities. *Proof of Unadjudged Incompetency which Prevents Running of Statute of Limitations*, 9 A.L.R.2d 964; *Kyle* v. *Green Acres at Verona, Inc.*, 207 A.2d 513 (1965); *Browne* v. *Smith, supra.* The burden of proof is on the person who alleges the disability if the other party denies it. *Bowman* v. *Lemon*, 154 N.E. 317 (1926); *In re Estate of Christman* v. *Christman*, 136 N.E.2d 80 (1955); *Carter* v. *City of Wooster*, 155 N.E.2d 533 (1958).

■ We do not agree with appellee's contention either in the sense that § 40 is not applicable to the case at bar because the conjugal partnership is an entity separate from the married couple which constitute it, said § 40 referring to natural and not to juridic persons. Let us see.

■ Nobody denies that the conjugal partnership has a juridic personality, since it possesses the necessary requirements to have its own personality: existence of a common interest, consciousness of the same, and organization of the community. But it is a familiar economic entity sui generis, having special characteristics, which does not have the same degree of juridic personality of ordinary partnerships or corporate entities, but as Alfonso de Cossio y Corral states in his work *La Sociedad de Gananciales* 23 (Madrid 1963) citing Carbonier, "another minor adapted to its rationale and to the interpenetration between the personal and community property existing therein; a mitigated personality, . . . the husband being the instrument of common interest."

It is a necessary and legal partnership, contracted for the purpose of maintaining and contributing to bear the marriage burdens, not instituted for a speculative purpose, but strengthened by the love of the spouses and which unites

them in order to meet more effectively the burdens and obligations of their status with the earnings obtained during the marriage. However, the rights in said partnership are unequal in relation to the legal representation, management, administration, and disposition of the community property, since the lawmaker granted them, in the first place, to the husband, although subject to reasonable limitations.

■ If by operation of the law, the power of representation to exercise said judicial actions rests, ordinarily, with the person of the husband, and if everything in connection with the development, system, and maintenance of the community concerns so closely the public policy, we cannot conceive a good reason for denying the protection of the aforecited § 40 to the conjugal partnership in the cases where the spouse who is entitled to bring the corresponding action is disabled. This provision has, of course, the conditional statement that "If a person entitled *to bring* an action . . ." who, in case of a conjugal partnership can only be the husband, or, in default thereof, the wife. It does not refer to "the person *having* by law *the right sought to be asserted*," as stated in Rule 15.1 of the Rules of Civil Procedure. It would still be more unfair to permit the term of limitation to run in the event that the husband as well as the wife were disabled a short time before the term of limitation expired. How can it be considered that the exercise of a right is passively abandoned when the only persons who may exercise it are insane? The term of limitation fixed by law shall be considered juridically interrupted during the whole period of disability, except, of course, in case of an action for recovery of real property.

Lastly, we must consider whether, after the husband is disabled, the administration of the conjugal partnership goes automatically to the wife. Appellee argues that when Iluminado Torres became disabled Carmen María Torres was the

administrator of the conjugal partnership instituted by both; and that, as such, she had the obligation to bring the action within one year of the occurrence of the event. It concludes that in failing to do so, the action prescribed, and § 40 cannot be invoked in their favor. In support thereof it cites *Cordero Crespo* v. *Registrar*, 88 P.R.R. 808 (1963). Said case is not applicable to the controversy involved herein. In *Cordero Crespo* the question examined was whether a daughter could be the guardian of her disabled father, whose wife was still alive, but very sick, a very distinct situation from that of the case at bar, since the guardianship presupposes a previous judicial determination of disability, exactly what they failed to do here, since Iluminado Torres was never judicially adjudged incapacitated before filing the complaint.

Section 1333 of the Civil Code (31 L.P.R.A. § 3717) provides: "The administration of the property belonging to the marriage shall be transferred to the wife when her husband is incapacitated or absent." This section originated from § 1441 of the Civil Code of Spain which provides that: "The administration of the property belonging to the marriage shall be transferred to the wife:

1. Whenever she may be the guardian of her husband in accordance with Article 220;

2. When she institutes proceedings to have her husband adjudged an absentee, in accordance with Articles 183 and 185;

3. In the case provided for by the first paragraph of Article 1436.

The courts shall also confer the management upon the wife, with such limitations as they may deem advisable, if the husband should be a fugitive from justice or should have been adjudged in default in a criminal cause, or, if, being absolutely disqualified for the administration, he should have taken no steps with respect thereto."

Appellee accepts that the Spanish commentators agree in that the management of the property by the wife must be previously conferred by the courts.[2] But it argues that in Puerto Rico it should be just the contrary, since according to it, our section was drafted differently from the Spanish, no judicial pronouncement to that effect being necessary in our jurisdiction.

Aside from the confusion and possible impairment to the rights of the injured spouse and to third innocent parties which could be caused by a decision in this sense, we do not believe that our section is drafted in such different terms as to call for a different interpretation. Both sections are conceived in terms that the administration of the property belonging to the conjugal partnership shall be "transferred" to the wife. The only difference is as to the enumeration of the circumstances under which said administration shall be transferred.

■■ There are very cogent reasons which lead us to conclude that a previous petition to the court and the approval of the latter by an order to that effect are necessary, before the wife becomes the administrator of the conjugal partnership: 1. The fact itself of transferring to the wife the administration of the property of the conjugal partnership produces a serious disturbance in the economic regimen of the family and greatly modifies the civil capacity of the spouses and 2. neither the husband's insanity nor his absence are in themselves sufficient reasons at law to produce such

---

[2] On this particular see:

9 Manresa, *Código Civil Español* 810 *et seq.* (1950 ed.).

4 Valverde, *Tratado de Derecho Civil Español* 395 (1938 ed.).

IV-I Puig Peña, *Derecho Civil* 209 *et seq.* (1966 ed.).

XXII Scaevola, *Código Civil* 936 (1967 ed.).

4 Bonet Ramón, *Compendio de Derecho Civil* 404 (1960 ed.).

IV Borrell y Soler, *Derecho Civil Español* 494 *et seq.* (1954 ed.).

5-I Castán, *Derecho Civil Español, Común y Foral* 296 (1960 ed.).

4-I Puig Brutau, *Fundamentos de Derecho Civil* 283 *et seq.* (1967 ed.).

disturbance or modification, it being necessary for the courts to intervene either by adjudging his incapacity or by requesting to justify the absence before them. Only in the cases where there has been a previous judicial declaration of incapacity or of absence, it is not necessary that the wife resort again to the courts to claim the administration of the property of the conjugal partnership, since after these different causes have been justified, the courts themselves, pursuant to the law, confer to the wife the representation and administration of the property which previously corresponded to the disabled or absent husband, it being unnecessary to request again the intervention of the court, to grant to the spouse once more what she already has.[3]

In the case at bar Carmen María Torres had never requested that her husband be adjudged incapacitated or that she be designated administrator of the conjugal partnership; therefore, she could not be such administrator on the date the fire occurred. Since she was not the administrator she could not file the complaint, her husband being, at law, the only person who could do it. The defense of prescription having been raised, it must be established at the trial on the merits that Iluminado Torres was actually incapacitated at the time of the fire.

The judgment dismissing the first cause of action should be reversed because it had prescribed.

### Judgment of the Second Cause of Action
### Appeal R-67-358

The first cause of action having been dismissed, the case was heard on the merits solely as to the second cause of action, that of the minor children of the marriage. Plaintiffs presented their evidence, at the close of which defendant moved for the dismissal of the action. The court granted

---

[3] To that respect see: Manresa, *op. cit.* at p. 811.

defendant's motion, rendering judgment against plaintiffs.

The findings of fact, in its pertinent part, are as follows:

Carmen María Torres was married to Iluminado Torres since October 20, 1955. In their marriage they had begotten two children: Jaime Luis and Carmen María, eight and seven years old respectively.

On January 16, 1965 Mrs. Torres was living with her husband and children in a two-room house which they had constructed in the back yard of the residence of Facunda Morales, Carmen María's grandmother, in Ward Tallaboa Saliente in Peñuelas. Between the two houses there was a distance of about 12 or 13 feet.

Facunda Morales' house received electric current through two service wires leading from a pole located in the yard of a neighbor, Juan Hernández. From said pole, the wires led to another pole which was in the street.

On January 16, 1965 there was a fire in Facunda Morales' house, which spread out to the Torres' house destroying it. As a result of said fire the Torres family lost their home and had to take refuge in a house which belonged to Nélida Morales. There they lived for 6 months, having to vacate the house upon the urging of the owner. At the present time the Torres live at Juan Rodríguez housing development, in Peñuelas.

As a result of the fire plaintiffs lost, in addition to their dwelling, the utensils and household goods, and their belongings.

After the fire Jaime Luis and Carmen María's grades dropped in school and they appeared gloomy and depressed.

On the day of the fire Carmen María Torres was in Ponce and she does not know how the fire started or its origin. Six months earlier she, together with two other neighbors, complained to an employee of the Water Resources Authority, Reinaldo Loyola, of the poor condition of the electric lines:

They were bare at several places, only three or four inches apart from each other and they passed through the branches of a liana tree which was about 50 feet away from Facunda Morales' house, rubbing against said branches.

Carmen María Torres also complained of the lack of light, and the Water Resources Authority installed a light in front of the street, but did not change the wires or "cut" the branches of the tree, which were in contact with the electric lines.

Said lines, which had lost their insulation in several places, were the ones which carried the electric current to Facunda Morales' house.

On January 16, 1965, while Marcos Bauzá was cutting Lydia Brunet son's hair, at about 75 or 100 feet away from Facunda Morales' house, he noticed that from the liana tree, through which the electric wires passed, approximately 50 feet from Facunda Morales' house, a spark of fire came out and a minute later, another, and then he heard Facunda and her daughter, Hilda Nereida, screaming and saw thicker smoke coming from the second and rear rooms of Facunda Morales' house.

None of the witnesses testified how and where the fire originated. There is no evidence either that the bare wires on the pole which carried electric current to Facunda Morales' house were in any manner whatsoever connected with the origin of the fire.

As we have pointed out, after assaying these facts, the trial court concluded that the existence of a causal connection between the damage caused and defendant's conduct had not been established, and consequently, dismissed the complaint, as to the second cause of action.

In order to reach this conclusion the court relied mainly on the cases of *Irizarry* v. *Water Resources Authority*, 93 P.R.R. 404 (1966) and *Burgos Quiñones* v. *Water Resources Authority*, 90 P.R.R. 597 (1964).

In the case of Irizarry as in the case at bar, the complaint was dismissed after plaintiff's evidence was presented, on motion of the defendant Authority. This Court affirmed the judgment modifying the doctrine in *Mariani* v. *Christy*, 73 P.R.R. 729 (1952) in the sense that at the close of plaintiff's evidence and upon defendant's motion for *nonsuit*, if the judge is convinced that plaintiff cannot prevail he may grant the motion. But the exception was made that his power should be exercised only in those cases where the aforementioned conclusion is reached after a serene and careful sifting of the evidence, and that, in case of doubt, it is better to require the defendant to present his case.

In *Irizarry* plaintiff alleged the electrocution of some bovine cattle as a result of defendant's negligence. However, in no manner whatsoever did plaintiff explain how the electric current was transmitted to the place where the animals were; and did not even prove satisfactorily that said animals had died as a result of the electric discharge. According to plaintiff's evidence, defendant's only act of negligence consisted in its approval of the electric installation made by plaintiff, which was defective because it lacked a ground wire.

This Court decided that the latter was not sufficient to establish the causal connection indispensable for the imposition of liability since plaintiff's evidence did not show that at any time whatsoever the Authority was notified of the defects creating a dangerous situation, the installation having been sufficient to receive the current for over eight years. What the evidence did show was that the installation was loaded by plaintiff with additional electrical appliances to which the necessary ground wire was not furnished either.

In the case of Burgos Quiñones a fire destroyed two houses which belonged to plaintiffs. They alleged that the fire originated in the electric lines property of the Water Resources Authority, and that it was due, solely and exclusively, to

the negligence of defendant Authority. The case having been heard on the merits, the complaint was sustained. This Court reversed the judgment since plaintiffs' evidence did not establish the necessary causal relation to impose liability. It took into consideration that the only witness offered by plaintiffs to establish the origin of the fire contradicted herself on several occasions, in addition to having offered a statement prior to the hearing of the case not consistent with her testimony. Furthermore, defendant offered oral and expert evidence which established the physical impossibility of the occurrence of the fire in the manner alleged by plaintiffs.

Plaintiffs' evidence in *Burgos Quiñones* only established that there was a fire. When the aforementioned witness arrived at her house she found there was smoke therein and that the wires were on fire; that as a result the heat generated by the fire broke the glass which protects the meter, and the service wires were exposed five or six feet from the house and they fell in the yard of the destroyed house.

These two cases are clearly distinguishable from the case at bar, since here it was satisfactorily established by plaintiff that defendant was negligent in the maintenance and care of its lines,[4] since having received complaints to that effect, it had failed to show that it had taken any step whatsoever to remedy the situation. From the record it also appears that witness Marcos Bauzá noticed that a spark flashed from the liana tree through which the electric lines of the Authority passed, and a minute later another one, and then he saw denser smoke coming out from the second and rear rooms of Facunda Morales' house. This evidence being prima facie sufficient to establish the causal relation between the damage and defendant's negligence.

---

[4] *Widow of Dávila* v. *Water Resources Authority*, 90 P.R.R. 316 (1964); *Ramos* v. *Water Resources Authority*, 86 P.R.R. 572 (1962).

The court should have taken into consideration the case of *Murcelo* v. *H. I. Hettinger & Co.*, 92 P.R.R. 398 (1965) where it was decided that although it is true that the party sustaining the affirmative in a litigation must produce the evidence to prove it, the law does not require that degree of proof which, excluding the possibility of error, produces absolute certainty, because such proof is rarely possible. It is not necessary to prove the case with mathematical precision through direct evidence, nor conclusively, nor with evidence producing such perfect degree of conviction as not to admit the possibility of evidence to the contrary, since the litigant may prove his case through indirect evidence. Plaintiff, after presenting evidence in the light of which a reasonable person may be convinced that the wrongful act is due to defendant's fault or omission, is not bound to eliminate or exclude every other possible cause of the occurrence from which the required liability is derived.

The trial court erred in concluding that plaintiff's evidence was not sufficient to establish the causal connection between the damage and the negligence, and in dismissing the complaint in that stage of the proceedings. It should have required plaintiff to present her case and to render the proper judgment in the light of the evidence offered by both parties.

The second judgment of October 13, 1967 appealed from should also be reversed and the original record remanded to the trial court for further proceedings, in connection with both causes of action, consistent with this opinion.