[Cite as *Rose v. Primc*, 2021-Ohio-3054.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| BERNARD JOSEPH ROSE, M.D. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29025 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-2014 |
| | : | |
| MICHAEL JOSEPH PRIMC, M.D., et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 3rd day of September, 2021.

. . . . . . . . . . .

BERNARD JOSEPH ROSE, M.D., 1318 Laurelwood Road, Kettering, Ohio 45409
    Plaintiff-Appellant, Pro Se

GEORGE S. COAKLEY, Atty. Reg. No. 0020419 and LESLIE E. WARGO, Atty. Reg. No. 0073113, 20600 Chagrin Boulevard, Suite 1100, Cleveland, Ohio 44122
    Attorney for Defendant-Appellee, Dr. Michael Joseph Primc

TODD A. GRAY, Atty. Reg. No. 0071568, Y. TIMOTHY CHAI, Atty. Reg. No. 0092202 and JEFFREY R. VAISA, Atty. Reg. No. 0096010, 1375 East Ninth Street, Suite 2250, Cleveland, Ohio 44114
    Attorneys for Defendants-Appellees, Glenbeigh Rehab Center and William Hale, Ph.D.

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Bernard Rose, M.D., appeals pro se from an order granting summary judgment to Defendant-Appellee, Michael Joseph Primc, M.D. Dr. Rose also appeals, pro se, from the dismissal of his claims against Defendants-Appellees, Glenbeigh Rehab Center ("Glenbeigh"), William Hale, Ph.D., and Dr. Richard Zinni, D.O. The claims were all dismissed because Dr. Rose failed to comply with the statute of limitations in R.C. 2305.113(A) and the requirements of Ohio's savings statute, R.C. 2305.19(A). The trial court also found that the statute of limitations was not tolled under R.C. 2305.16, and that Dr. Rose's claims were barred because they were not brought within the four-year statute of repose in R.C. 2305.113(C).

{¶ 2} According to Dr. Rose, the statute of limitations for his claims should be based on R.C. 2305.10(B)(1), which pertains to bodily injury caused by hazardous or toxic chemicals, and not on the statute of limitations for medical claims. Dr. Rose further contends that he brought his claims within the proper time after he discovered, or in the exercise of reasonable care and diligence, should have discovered, the resulting injury. In addition, Dr. Rose argues that the statute of limitations should be tolled because he was of unsound mind. And finally, Dr. Rose mentions certain procedural failings, like the fact that the trial court required him to offer proof when the allegations in the complaint should have been construed as true. Allegedly, the trial court also failed to consider the affidavit that Dr. Rose did file.

{¶ 3} After considering the record, we conclude that Dr. Rose's claims are "medical claims" under R.C. 2305.113(E)(3), and not claims for bodily injury due to exposure to

hazardous or toxic chemicals. The statute of limitations in R.C. 2305.113(A) therefore applied, and the trial court correctly found Dr. Rose's claims barred because he failed to file his original action within the one-year time period provided for bringing medical claims under R.C. 2305.113(A). We agree with the trial court that Dr. Rose's cause of action accrued more than one year before he filed his original complaint.

{¶ 4} Moreover, Dr. Rose failed to refile his medical claims until 21 months after the original claims were dismissed. As a result, the requirements of the savings statute in R.C. 2305.19(A) were not satisfied. However, R.C. 2305.19(A) did not even apply here. R.C. 2305.113(C) is a statute of repose, which bars any medical claims that are not filed within four years after the acts or omissions causing an injury. Thus, a plaintiff may not take advantage of the savings statute in R.C. 2305.19(A) to refile a medical claim after the applicable one-year statute of limitations has expired, if the four-year statute of repose for medical claims has also expired. Here, Dr. Rose's claims were barred because the one-year statute of limitations had expired, and the four-year repose period had expired before Dr. Rose refiled his complaint. In fact, he refiled the complaint almost seven years after the occurrence of the act or omission constituting the alleged basis of the medical claims. Consequently, Dr. Rose could not take advantage of the savings provision in R.C. 2305.19(A), and his claims were barred by the statute of repose in R.C. 2305.113(C).

{¶ 5} Dr. Rose also could not salvage his claims based on tolling under R.C. 2305.16, because there were no genuine issues of material fact concerning whether Dr. Rose was of unsound mind when the cause of action accrued or thereafter. Finally, the trial court did not commit any error in requiring proof or in considering the evidence.

{¶ 6} Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 7} On June 21, 2018, Dr. Rose filed a pro se medical malpractice action against Dr. Primc, Dr. Richard Zinni, Dr. Hale, and Glenbeigh.   That case was designated as Montgomery County C.P. No. 2018-CV-2835.[1]   Service was obtained on Dr. Primc, who filed a motion to dismiss, claiming that the Civ.R. 10(D)(2) affidavit that Dr. Rose filed was inadequate because it was not provided by a physician.   The remaining defendants in that action were either not served (Glenbeigh and Dr. Hale) or were served and did not file an appearance (Dr. Zinni).

{¶ 8} The original complaint was presented in narrative form and is difficult to decipher.   From what we can tell, Dr. Rose was hospitalized at Glenbeigh from April 29, 2013 through June 20, 2013, seeking treatment for alcohol dependence.   2018 Complaint, Discharge Summary, p. 1.   An August 2011 MRI of Dr. Rose, which was attached as part of the complaint, indicated some changes that could be seen with "hypoxic/anoxic brain injury."   This MRI appears to have been taken during a prior admission at the Linder Center of Hope, where Dr. Rose was admitted for "evaluation and management of his substance abuse [alcohol] and bipolar disorder."   2018 Complaint, Linder Center of Hope Progress Notes, p. 2.   The MRI noted that the changes also could have occurred in the context of alcohol abuse.   *Id.*

---

[1] Relevant pleadings from that case were attached to Dr. Primc's Motion to Dismiss (June 16, 2020), as Tab 1 (later converted to motion for summary judgment). We are also permitted to take judicial notice of judicial opinions and public records accessible on the internet.   *E.g., State v. Thompson*, 2d Dist. Montgomery No. 28449, 2019-Ohio-5140, ¶ 4, fn. 1.

{¶ 9} While Dr. Rose was hospitalized at Glenbeigh, Dr. Zinni ordered an MRI, which was taken on May 3, 2013. This MRI was normal. 2018 Complaint, Ashtabula County Medical Center "Final Report," p. 1. Finally, the Final Report of Cleveland Clinic Star Imaging was included with the 2018 Complaint. The date of the "exam" is listed as May 24, 2017, and the history given is of a "58 year old man with chronic heartburn, monoxide exposure, serum imbalance, and low sodium." *Id.* at p. 1. The procedure done was an MRI with and without contrast, and the impression was: "Abnormal signal intensity at the interior basil ganglia bilaterally with evidence for magnetic susceptibility artifact. The findings may be related to mineralization. * * * [A] previous insult such as from carbon monoxide exposure could also have this appearance." *Id.* at p. 2.

{¶ 10} From what can be gleaned from the rambling nature of the 2018 Complaint, Dr. Rose contended that, while he was at Glenbeigh in April through June 2013, his conduct was actually the result of carbon monoxide poisoning, rather than confusion and bizarre behavior. Dr. Primc was included in the complaint based on his limited psychiatric consultation with Dr. Rose during the June 2013 Glenbeigh stay. Dr. Primc's alleged malpractice was that, while treating Dr. Rose at Glenbeigh, he made an "incorrect psychiatric diagnosis" by relying on the May 2013 MRI. Apparently, Dr. Primc should have found the earlier 2011 MRI showing some changes, perhaps suggestive of carbon monoxide poisoning. 2018 Complaint at p. 1.

{¶ 11} Dr. Hale was apparently included because he was a psychologist/counseling supervisor at Glenbeigh who signed the discharge summary and allegedly sent his diagnosis to the state medical board.

{¶ 12} On August 22, 2018, the trial court granted Dr. Primc's motion to dismiss

the claims against him without prejudice. Dr. Rose then appealed to our court on October 26, 2018. In December 2018, Dr. Primc filed a motion to dismiss the appeal, and we filed an order asking Dr. Rose to show cause why the appeal should not be dismissed. On January 18, 2019, we dismissed the appeal because Dr. Rose had failed to articulate any reason why he could not refile his action against Dr. Primc and attach a proper affidavit of merit. *See Rose v. Primc*, 2d Dist. Montgomery No. 28186, p. 7 (Decision and Entry, Jan. 18, 2019). In a footnote, we also mentioned Dr. Primc's argument that, under R.C. 2305.19(A), Dr. Rose could refile his claims against Dr. Primc within one year after the trial court dismissed the claims. *Id.* at p. 4, fn. 1.

{¶ 13} Rather than refiling, Dr. Rose appealed our decision to the Supreme Court of Ohio, which declined jurisdiction over the appeal on May 15, 2019. Dr. Rose then refiled his pro se medical malpractice action on May 14, 2020, again including Glenbeigh, Dr. Primc, Dr. Zinni, and Dr. Hale as defendants. This time, Dr. Rose attached the affidavit of Dr. DiNella, a psychiatrist, who concluded that Dr. Rose's case had merit. The 2020 Complaint and the attached documents were essentially identical to the 2018 Complaint. *See* Complaint (May 14, 2020). All defendants were successfully served.

{¶ 14} On June 16, 2020, Dr. Primc filed a motion to dismiss, contending that the action was barred because Dr. Rose failed to refile his action within one year of the original dismissal on August 22, 2018. Primc Motion to Dismiss, p. 5-7. Dr. Primc also argued that the action was barred by R.C. 2305.113(C), which is Ohio's statute of repose. *Id.* at p. 7-9.

{¶ 15} After the court established a briefing schedule on the motion to dismiss, Dr. Rose asked for an extension of time. On July 14, 2020, the court granted Dr. Rose's

motion and also converted the motion to dismiss into a motion for summary judgment, based on the court's belief that it could not take judicial notice of the pleadings in the prior case that Dr. Rose had filed. The court also established submission dates for the summary judgment motion.

{¶ 16} Glenbeigh and Dr. Hale then filed a motion to dismiss on July 16, 2020, arguing that the second action was precluded because they were never served during the first action. They also stated that even if the savings statute applied, the second complaint was still untimely. Glenbeigh/Hall Motion to Dismiss (July 16, 2020). Subsequently, Dr. Primc supplemented his motion to dismiss (including the summary judgment conversion) and added affidavits and pleadings pertaining to the prior lawsuit.

{¶ 17} On August 19, 2020, Dr. Rose filed a memorandum opposing the motion Glenbeigh and Dr. Hale had filed. On September 9, 2019, Glenbeigh and Dr. Hale replied to Dr. Rose's memorandum.

{¶ 18} After being granted leave by the court, Dr. Rose filed another response to Dr. Primc's summary judgment motion on September 18. 2020. This was followed by Dr. Primc's reply, filed on October 2, 2020. The trial court then issued an order granting the motion for summary judgment and the motion to dismiss. Order (Dec. 29, 2020). The court dismissed Dr. Rose's claims against all defendants with prejudice, including Dr. Zinni, who had been served but had not appeared. Following the dismissal, Dr. Rose appealed to our court on January 27, 2021.

## II.  Dismissal Under R.C. 2305.113 Statute of Limitations

{¶ 19} Dr. Rose is representing himself pro se on appeal, as he did in the trial court.

Dr. Rose has asserted eight assignments of error, but he has failed to follow the proper format for briefs as outlined in App.R. 16(A)(1)-(8) and (D). Based on these omissions, we could "either strike the offending portions of the brief or sua sponte dismiss the appeal." *Brazelton v. Brazelton*, 2d Dist. Montgomery No. 24837, 2012-Ohio-3593, ¶ 8. However, in the interests of justice, we will review the merits of Dr. Rose's claims. *Id.* This will involve addressing some assignments of error out of order. We will begin with the second, fourth, and sixth assignments of error, which are interrelated.

{¶ 20} Dr. Rose's fourth assignment of error (recited verbatim), states as follows:

Common Pleas Court (CPC) was wrong to grant summary judgment

56(c) based solely on Statute of Limitation 2305.113.

{¶ 21} Under this assignment of error, Dr. Rose argues the trial court should have applied the statute of limitations in R.C. 2305.10(B)(1) (for exposure to toxic chemicals), rather than in R.C. 2305.113(A) (relating to medical malpractice), because he now believes the change in his mental state was due to having been exposed to toxic carbon monoxide levels. His exposure allegedly arose while he drove a 1992 convertible daily in non-rainy weather and for the entire week before his 50-day stay at Glenbeigh. Appellant's Brief, p. 6.

{¶ 22} A related assignment of error is the second assignment of error, which states:

Failure to warn of "Common Knowledge" toxic and lethal gas poisoning possibility.

{¶ 23} In connection with this assignment of error, Dr. Rose contends that Appellees failed to properly investigate the carbon monoxide exposure and to warn him

of possible toxic gas exposure. Another related assignment of error is Dr. Rose's sixth assignment of error (reproduced verbatim), which states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS/ APPELLEES WHERE THERE IS A QUESTION OF FACT AS TO WHEN THE COGNIZABLE EVENT OCCURRED WHICH TOLLED THAT STATUTE OF LIMITATIONS IN MEDICAL MALPRACTICE CASE, SUMMARY JUDGMENT IS IMPROPER AS A MATTER OF LAW.

{¶ 24} Concerning this assignment, Dr. Rose again argues that the proper statute of limitations is found in R.C. 2305.10(B)(1). He further admits that he learned on June 15, 2017, that "a fellow CCF doctor had reviewed the MRI of 2013 and found possible pathology suggesting carbon monoxide damage." Appellant's Brief at p. 10. However, Dr. Rose contends that the opinion of the doctor in question did not qualify as a "competent medical authority" because that doctor was not a neurologist or psychiatrist. *Id.* Based on this theory, Dr. Rose argues that June 15, 2017, was not a "cognizable event" for applying the statute of limitations.

{¶ 25} Before we address these issues, we will briefly discuss the appropriate standards of review that apply to decisions dismissing claims under Civ.R. 12(B)(6) and to summary judgments.

## A. Dismissal Under Civ.R. 12(B)(6)

{¶ 26} The law is well-established that orders granting Civ.R. 12(B)(6) motions to dismiss are subject to de novo review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79,

2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.   De novo review "means that we apply the same standards as the trial court."   (Citations omitted.)   *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 27} In the context of Civ.R. 12(B)(6) motions, this means that "[i]n construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."   *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1998).   Then, before a complaint may be dismissed, "it must appear beyond doubt that plaintiff can prove no set of facts warranting a recovery."   *Id.*, citing *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Where, as here, documents are attached to or are incorporated into a complaint, we may also consider the documents.   *State ex rel. Washington v. D'Apolito*, 156 Ohio St.3d 77, 2018-Ohio-5135, 123 N.E.3d 947, ¶ 10.

{¶ 28} A motion to dismiss based on the statute of limitations may be granted where the defect is apparent on the face of the complaint, but such a motion "is erroneously granted where the complaint does not conclusively show on its face the action is barred by the statute of limitations."   *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 379, 433 N.E.2d 147 (1982), paragraph three of the syllabus.   *Accord LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10.   In that situation, summary judgment would be the proper procedure. Here, however, we have both types of dismissals.

B.   Summary Judgment Decisions

{¶ 29} "A trial court may grant a moving party summary judgment pursuant to Civ.R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).

{¶ 30} "A party seeking summary judgment 'bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 26, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher* at 293.

{¶ 31} As with decisions on motions to dismiss, we review trial court rulings on summary judgment decisions de novo. *GNFH, Inc.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16. With these standards in mind, we will consider Dr. Rose's arguments.

## C.   R.C. 2305.10(B)(1)

{¶ 32} Dr. Rose argues that R.C. 2305.10(B)(1) applies here.   R.C. 2305.10(A) generally provides a two-year statute of limitations for product liability claims and for certain actions for bodily injury and injury to property.   The section to which Rose refers, R.C. 2305.10(B)(1), states that:

> For purposes of division (A) of this section, a cause of action for bodily injury that is not described in division (B)(2), (3), (4), or (5) of this section and that is caused by exposure to hazardous or toxic chemicals, ethical drugs, or ethical medical devices accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.

{¶ 33} As far as we can tell, Dr. Rose is arguing that use of this statute would toll the limitations period for bringing his action until May 20, 2020, when Dr. Kenneth DiNella signed an affidavit (the 2020 Civ.R.10(D)(2) affidavit) indicating that the changes in Dr. Rose's MRI in 2011 were "most characteristic of carbon monoxide poisoning."   DiNella Affidavit attached to the 2020 Complaint, p. 3.   This is based on Dr. Rose's apparent belief that Dr. DiNella was the first "competent medical authority" who informed him of his injury.

{¶ 34} This argument is incorrect.   First of all, Dr. Rose did not allege that the defendants had anything to do with his exposure to toxic chemicals; he alleged that they

failed to diagnose and treat his condition. As a result, Dr. Rose's claims are "medical claims," which are defined in R.C. 2305.113(E)(3) as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, * * * and that arises out of the medical diagnosis, care, or treatment of any person."[2]

{¶ 35} Under R.C. 2305.113(A), "an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued." For purposes of this statute, "a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." *Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph one of the syllabus (interpreting predecessor statute, R.C. 2305.11(A), which is similar to R.C. 2305.113(A) in pertinent part).

{¶ 36} There is no dispute here that Dr. Rose's relationship with any of the defendants ended, at the latest, on June 20, 2013, when he was discharged from Glenbeigh. And, according to the undisputed evidence, Dr. Rose's relationship with Dr. Primc ended earlier, on June 3, 2013. *See* Primc Motion to Dismiss, Tab 2, Affidavit of Dr. Primc, ¶ 3 (indicating that he saw Dr. Rose on only four occasions: May 3, 2013, May 6, 2013, May 13, 2013, and June 3, 2013). Dr. Primc last saw Dr. Rose on June 3, 2013, and did not see him thereafter. *Id.* at ¶ 8.

---

[2] Dr. Rose has alleged that the medical defendants should have warned him of the possibility that he had been exposed to carbon monoxide, but that is part and parcel of the medical treatment ("failure to diagnose"), not a separate tort.

**{¶ 37}** Given these dates, the original complaint, filed on June 21, 2018, was clearly more than one year after the medical relationships ended. However, as noted, Dr. Rose argues that the current lawsuit is timely because he did not discover the resulting injury from the alleged malpractice until May 5, 2020, when he read Dr. DiNella's Civ.R. 10(D)(2) affidavit. *See* Appellant's Brief at p. 8. This argument is plainly incorrect, since Dr. Rose filed an action in June 2018, raising the same allegations about carbon monoxide and medical malpractice that he asserted in the 2020 case.

**{¶ 38}** Based on Dr. Rose's own allegations in the complaint filed in the present case on May 14, 2020, the trial court found that "the cognizable event occurred on June 15, 2017, when Dr. Rose discovered the resulting injury." Order at p. 11. The court's finding was due to the complaint's allegations that on June 15, 2017, another neuro-radiologist reviewed the May 3, 2013 MRI and " 'felt pathological changes existed,' " which Dr. Rose described as a " '***revelation.***' " (Emphasis sic.) *Id.*, quoting Complaint at p. 1. The trial court therefore concluded that Dr. Rose's original complaint (filed on June 21, 2018) was barred because it was filed more than one year after the cognizable event. *Id.* at p. 12. We agree with the trial court. There is simply no evidence otherwise.

**{¶ 39}** We also stress Dr. Rose's admission, as noted above, that he learned about the pathology suggesting carbon monoxide on June 15, 2017. As indicated, Dr. Rose discounts this fact because the doctor who provided the information was not a neurologist or psychiatrist as required by Civ.R. 10(D)(2). However, there is no requirement that discovery of an injury must be occasioned by a doctor providing a Civ.R. 10(D)(2) affidavit. To the contrary, the law requires only that the "patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Frysinger*,

32 Ohio St.3d 38, 512 N.E.2d 337, at paragraph one of the syllabus. "The standard of reasonable care and diligence required by this test is that which is employed by an ordinary reasonably prudent person in like circumstances." *Clark v. Hawkes Hosp. of Mt. Carmel*, 9 Ohio St.3d 182, 183, 459 N.E.2d 559 (1984).

{¶ 40} Furthermore, courts must look to a particular case's facts and decide "when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 5-6, 516 N.E.2d 204 (1987), paragraph one of the syllabus.

{¶ 41} "The 'extent and seriousness of his condition' language of the test set forth in *Hershberger* * * * requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989), syllabus. "If a patient believes, based on a known injury, that her treating medical professional has done something wrong, that belief is sufficient to alert the patient to the need to investigate and pursue a remedy." *Schmitz v. Natl. Collegiate Athletic Assn.*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 22, citing *Allenius* at 133.

{¶ 42} The affidavit that Dr. Rose signed on September 15, 2020, indicated that he graduated from The Ohio State University Medical School in 1984 and had been a primary care physician for 33 years. Rose Affidavit (Sep. 18, 2020), p. 1. Dr. Rose further stated that "[o]ver the last 9 years," he had "been very interested in the effects of Carbon Monoxide on human mental and physical problems," had "read over 700 peer-reviewed articles," and had "reviewed over 100 books dealing with carbon monoxide pathology." *Id.* at p. 2. In addition, Dr. Rose's affidavit stated that *since 2016*, he had been aware that his automobile "was causing toxic carbon monoxide levels in the driver's compartment." *Id.* at p. 4, referencing Ex. G attached to the Rose Affidavit.[3]

{¶ 43} In light of these facts, including Dr. Rose's knowledge of carbon monoxide effects and pathology dating back to around 2011, his suspicion since at least 2016 that he had been exposed to inappropriate carbon monoxide, and the MRI abnormalities related to potential carbon monoxide exposure to which he was alerted in June 2017, a reasonably prudent person in Dr. Rose's circumstances would have been put on notice of the need for further inquiry as to the cause of his condition and the need to pursue remedies, at the latest, on June 15, 2017 (and probably earlier). Therefore, the trial court correctly concluded that the "cognizable event" occurred on June 15, 2017.

{¶ 44} Based on the preceding discussion, the trial court did not err in applying the statute of limitations found in R.C. 2305.113(A) and in assigning a date on which the

---

[3] Exhibit G attached to Dr. Rose's affidavit was a July 13, 2016 Inspection Report of Dr. Rose's automobile. The report stated that the vehicle "is suspected of exposing the occupant(s) to Carbon Monoxide poisoning." *Id.* at p. 1. Further, the report concludes that "Tailpipe emissions of CO and HC are extremely high, due to a malfunction in the fuel injection system," and that "[u]nder some conditions, tailpipe emissions enter the passenger compartment, creating a hazardous environment." *Id.* at p. 5.

cognizable event occurred for purposes of applying the statute. The second, fourth, and sixth assignments of error are overruled.

### III. Tolling of the Statute of Limitations

{¶ 45} Concerning tolling, Dr. Rose presents the following three assignments of error (all recited verbatim):

Assignment of Error Three: "Common Court stated pg 13 para 18 'Dr. Rose does not provide evidence of unsound mind. . . Furthermore, Dr. Rose does not assert he was of unsound mind at the time the cause of action accrued....... The Court therefore finds the tolling provision of R.C. 2305.16 to be inapplicable.' "

Assignment of Error Seven: "Defendant's contention 'Not of unsound mind.' "

Assignment of Error Eight: "Failure, by plaintiff to provide proof of allegation in memorandum against Summary Judgment."

{¶ 46} Under these assignments of error, Dr. Rose essentially contends that there were genuine issues of material fact concerning whether he was of "unsound mind" at the time his cause of action accrued, and that the trial court, therefore, should have found the statute of limitations tolled. The trial court rejected Dr. Rose's claim that his action was timely filed due to R.C. 2305.113(C) and/or R.C. 2305.113(D)(1). Order at p. 11-13. We will only consider R.C. 2305.113(C), as Dr. Rose did not mention R.C. 2305.113(D)(1) in his brief.

{¶ 47} Regarding R.C. 2305.113(C), the court held that tolling did not apply

because Dr. Rose failed to provide any evidence that he was of unsound mind when the cause of action accrued on June 15, 2017, or at any time thereafter. *Id.* at p. 12. Again, we review the court's decision on a de novo basis.

{¶ 48} As relevant here, R.C. 2305.113(C)(1) states that "No action upon a medical * * * claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical * * * claim." "R.C. 2305.113(C) does not bar a vested cause of action, but prevents a cause of action from vesting more than four years after the breach of the duty of care. Therefore, it is a true statute of repose." *Ruther v. Kaiser*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 18.

{¶ 49} In a very recent decision, the Supreme Court of Ohio distinguished as follows between statutes of limitations and statutes of repose:

A statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Black's Law Dictionary* 1707 (11th Ed.2019). A statute of limitations operates on the remedy, not on the existence of the cause of action itself. *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 290, 503 N.E.2d 717, fn. 17 (Douglas, J., concurring). A statute of repose, on the other hand, bars "any suit that is brought after a specified time since the defendant acted * * * even if this period ends before the plaintiff has suffered a resulting injury." *Black's Law Dictionary* at 1707. A statute of repose bars the claim - the right of action - itself. *Treese v. Delaware*, 95 Ohio App.3d 536, 545, 642 N.E.2d 1147 (10th Dist.1994). * * *

*Wilson v. Durrani*, Ohio Slip Opinion No. 2020-Ohio-6827, ___ N.E.3d ___, ¶ 9.

**{¶ 50}** The Supreme Court of Ohio further remarked that "[s]tatutes of limitations and statutes of repose target different actors." *Id.* at ¶ 10, citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 8, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014). In this vein, the court explained that:

Statutes of limitations emphasize plaintiffs' duty to diligently prosecute known claims. [*CTS Corp.* at 8], citing *Black's Law Dictionary* 1546 (9th Ed.2009). Statutes of repose, on the other hand, emphasize defendants' entitlement to be free from liability after a legislatively determined time. *Id.* at 9, 134 S.Ct. 2175. In light of those differences, statutory schemes commonly pair a shorter statute of limitations with a longer statute of repose. *California Pub. Emps.' Retirement Sys. v. ANZ Securities, Inc.*, --- U.S. ----, 137 S.Ct. 2042, 2049, 198 L.Ed.2d 584 (2017). When the discovery rule – that is, the rule that the statute of limitations runs from the discovery of injury – governs the running of a statute of limitations, the "discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability." *Id.* at ----, 137 S.Ct. at 2050.

*Wilson* at ¶ 10.

**{¶ 51}** In *Wilson*, the court stressed that "R.C. 2305.113(C) 'exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation.' " *Wilson* at ¶ 16, quoting *Ruther*, 134 Ohio St.3d 408, 2012-Ohio-5686, 983 N.E.2d 291, ¶ 19. "It is a 'true statute of repose that applies to both vested and nonvested claims. Therefore, any medical-

malpractice action must be filed within four years of the occurrence of the act or omission alleged to have caused a plaintiff's injury.' " *Id.*, quoting *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 1.

{¶ 52} As applied to the current case, whether or not a prior action was filed and dismissed, this action would be barred, absent tolling, because it was filed on May 14, 2020, nearly seven years after the alleged "acts or omissions constituting the alleged basis of the medical * * * claim." R.C. 2305.113(C)(1). Notably, this subsection of the statute does not refer to when a claim accrues; *it refers to when the acts or omissions occurred*.

{¶ 53} Furthermore, even if we consider the original complaint that was filed on June 21, 2018, it was filed five years after the alleged "acts or omissions constituting the alleged basis of the medical claim." R.C. 2305.113(C)(1). Again, the operative date here is when the acts occurred, i.e., April 29 through June 20, 2013, not when the cause of action accrued.

{¶ 54} R.C. 2305.113(C) contains a few exceptions to the four-year barrier. The first, in subsection (C)(1), is for "persons within the age of minority or of unsound mind as provided by section 2305.16 of the Ohio Revised Code." R.C. 2305.16 states, in pertinent part, that:

> Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections * * * is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is

removed. * * *

{¶ 55} A second exception in R.C. 2305.113(C)(2) allows tolling after a cause of action accrues "if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind."

{¶ 56} " 'Of unsound mind' includes all forms of derangement or intellectual disability." R.C. 1.02 (C). " '[D]erangement' has been equated with insanity." *Fisher v. Ohio Univ.*, 63 Ohio St.3d 484, 488, 589 N.E.2d 13 (1992), citing *Webster's Third New International Dictionary* 607 (1986). A plaintiff has the burden of showing that " 'the condition from which he or she suffered was "some species of mental deficiency or derangement [that caused him] to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice.' " *Thomas v. Progressive Cas. Ins. Co.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 29 (2d Dist.), quoting *Bowman v. Lemon*, 115 Ohio St. 326, 329, 154 N.E. 317 (1926), paragraph three of the syllabus.

{¶ 57} Dr. Rose argues on appeal that there are factual issues concerning whether he was of unsound mind while at Glenbeigh due to his mind having been described as "hazy" or "not in touch with reality." Appellant's Brief at p. 5. Dr. Rose also claims (without elaboration) that he "has obtained proof of 52 days of unsound mind since filing memorandum against summary judgment." *Id.* To the extent this latter statement refers to matters outside the record, we will not consider it. *E.g., State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus (stressing "[a] reviewing court

cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter").

{¶ 58} The trial court rejected tolling for two reasons. First, Dr. Rose failed to submit any evidence that he was of unsound mind on June 15, 2017, or at any time thereafter. Order at p. 12. The court also stressed that Dr. Rose did not claim that he was unsound at these times; rather, he asserted "without proof that he was of 'unsound mind' for a period of seventeen days in 2013 after he was treated by Dr. Primc." *Id*.

{¶ 59} We agree with the trial court. The only items Dr. Rose submitted were a "Memorandum Against Motion to Dismiss" (Aug. 19, 2020), containing only argument and unverified allegations; a "Motion Against Summary Judgement [sic] and Request for Jury Trial" (Sep. 18, 2020), containing only argument and unverified allegations; and his own affidavit with various unauthenticated materials attached. Rose Aff. (Sep. 18, 2020).

{¶ 60} Dr. Rose's affidavit sets forth his qualifications and background as a primary care physician. Rose Aff. at p.1. He then stated that he experienced "substandard treatment" while a patient at Glenbeigh. *Id*. at p. 2. The rest of the affidavit detailed incidents and medical evaluations that occurred between 2011 and April 2017 which indicated, in Dr. Rose's opinion, that the prior diagnoses of his medical problems ("schizo-affective, biopolar, obsessive compulsive, alcohol dependent, benzodiazepine") were "wrong and were arrived at by substandard review of all medical records available to the Glenbeigh personnel and Dr. Primc." *Id*. at p. 6. This had nothing to do, however, with whether Dr. Rose was of unsound mind on June 15, 2017, when the cause of action accrued, or on April 19, 2017, which Dr. Rose suggests in his affidavit is the date he was given an opinion of possible carbon monoxide involvement. *Id*. at p. 5. This information

also had nothing to do with whether Dr. Rose was of unsound mind any time after June 15, 2017.

{¶ 61} The materials attached to Dr. Rose's affidavit consisted of various medical records and other records, which were not properly authenticated. Nonetheless, even if these materials were considered, a consultation with Dr. Goldstick dated May 26, 2017, stated that, after being admitted to Kettering Hospital on May 20, 2017, for a "brief period of psychological decompensation," Dr. Rose "returned to his normal mentation * * *." Rose Aff., Ex. A, May 26, 2017 Report of Dr. Goldstick, p. 2. At that time, according to the patient history, Dr. Rose noted that "in 2010, he bought a used car and was driving this for quite some time. He feels there may have been exposure of carbon monoxide at the time and when the car was tested at one point it registered 300 ppm of carbon monoxide." *Id.*[4]

{¶ 62} In Dr. Goldstick's examination of Dr. Rose on May 26, 2017, Goldstick stated that Dr. Rose's attention and concentration were "normal," his speech was "normal," his level of consciousness was "alert," his knowledge was "good," and his comprehension was "normal." Ex. A at p. 2-3. Another examination by Dr. Goldstick on September 27, 2017, indicated that Dr. Rose "remains stable at this time and is operating a [sic] normal activities at this time [and] apparently is also active professionally." Ex. A, September 27, 2017 Report of Dr. Goldstick, p. 3 of 12. Dr. Rose did not provide any other materials relating to the "unsoundness" of his mind after September 2017.

{¶ 63} Accordingly, even if we considered Dr. Rose's affidavit and the attached materials, they would only disprove any contention that he was of unsound mind as of

---

[4] This is the report we previously mentioned in fn. 2.

June 15, 2017, or any time thereafter.

{¶ 64} Under the eighth assignment of error, Dr. Rose questions why the trial court required him to show proof of his "unsound mind," when Civ.R. 12(B)(6) requires that the court construe all the allegations in the complaint as true. Appellant's Brief at p. 11. Dr. Rose then offers to submit records from his current psychiatrist, which he obtained in late February 2021. As to the latter point, Dr. Rose is talking about records he obtained after he appealed to our court on January 27, 2021. As noted, we cannot add matters to the record that the trial court did not consider. *Ishmail,* 54 Ohio St.2d 402, 377 N.E.2d 500, at paragraph one of the syllabus.

{¶ 65} Concerning the proof requirement, the trial court was entitled to consider what the evidence established, because it had converted the motion to dismiss into a motion for summary judgment. This is a procedure trial courts may use if they give litigants proper notice. "Under Civ.R. 12(B) and 56(C), a court must notify all parties at least fourteen days before the time fixed for hearing when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment." *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228, 729 N.E.2d 1181 (2000), citing *Petrey v. Simon*, 4 Ohio St.3d 154, 447 N.E.2d 1285 (1983), paragraphs one and two of the syllabus. A*ccord Shamblin v. Bob Evans Farms, LLC*, 2d Dist. Clark No. 2020-CA-4, 2020-Ohio-4238, ¶ 18.

{¶ 66} Here, the trial court gave ample notice of its intent and allowed Dr. Rose more than adequate time to file whatever he desired. On July 14, 2020, the court notified the parties that it was converting the motion to dismiss to a motion for summary judgment. *See* Decision (July 14, 2020), p. 2-3. The court then gave Dr. Primc until July 31, 2020,

to submit evidentiary materials, and it also gave Dr. Rose until September 11, 2020, to file a response. *Id.* at p. 3. In addition, the court later granted Dr. Rose's motion for an extension of time, allowing Dr. Rose an extra week to submit his materials. *See* Decision (Sep. 11, 2020).

{¶ 67} As a pro se litigant, Dr. Rose clearly does not understand legal procedure, and, like most such litigants, finds the law difficult. However, we have repeatedly emphasized that "[i]n Ohio, a pro se litigant 'is presumed to have knowledge of the law and of correct legal procedure and is held to the same standard as all other litigants.' " *Citibank S. Dakota, N.A. v. Wood*, 169 Ohio App.3d 269, 2006-Ohio-5755, 862 N.E.2d 576, ¶ 57 (2d Dist.), quoting *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). *See also Williams v. PNC Bank, Natl. Assn.*, 2d Dist. Montgomery No. 28933, 2021-Ohio-977, ¶ 2; *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10.

{¶ 68} The trial court acted correctly in converting the motion to one for summary judgment. When Dr. Primc submitted materials to satisfy his burden on summary judgment, Dr. Rose had the reciprocal burden of showing there were genuine issues of material fact precluding summary judgment. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. This, Dr. Rose failed to do.

{¶ 69} In this context, a few additional points are in order. Normally, when a complaint is dismissed without prejudice, the plaintiff "may commence a new action within one year after the date of * * * the plaintiff's failure otherwise than on the merits." R.C. 2305.19(A) (the savings statute). The trial court held that even if the original complaint had been timely filed, Dr. Rose could not take advantage of the savings statute. Order

at p. 12-14. In this regard, the court noted first that the 2020 action was filed about 21 months after the first action was dismissed on August 22, 2018. Because this was more than a year after the dismissal, R.C. 2305.19(A) did not apply and provided an additional reason for dismissing Dr. Rose's claims. *Id.* at p.13. We agree that this would normally be the case, and further observe that Dr. Rose has not assigned error specifically on this issue. However, the Supreme Court of Ohio recently issued a decision that impacts what previously would have been true in situations like the present. Specifically, in *Wilson*, the Supreme Court of Ohio held that:

> R.C. 2305.113(C) is a true statute of repose that, except as expressly stated in R.C. 2305.113(C) and (D), clearly and unambiguously precludes the commencement of a medical claim more than four years after the occurrence of the alleged act or omission that forms the basis of the claim. Expiration of the statute of repose precludes the commencement, pursuant to the saving statute, of a claim that has previously failed otherwise than on the merits in a prior action.

*Wilson*, Ohio Slip Opinion No. 2020-Ohio-6827, __ N.E.3d __, at ¶ 38. Therefore, a plaintiff may not "take advantage of Ohio's saving statute to refile a medical claim after the applicable one-year statute of limitations has expired if the four-year statute of repose for medical claims has also expired." *Id.* at ¶ 1.[5]

{¶ 70} Dr. Rose's latest contact with Dr. Hale, Dr. Zinni, and Glenbeigh ended at the latest on June 20, 2013, and the latest contact with Dr. Primc was on June 3, 2013.

---

[5] The trial court was likely unaware of the *Wilson* decision, as it was issued on December 23, 2020, only a few days before the trial court dismissed Dr. Rose's case with prejudice on December 29, 2020.

Four years from the latest date would have been June 21, 2017. By the time Dr. Rose filed his initial action on June 21, 2018, the statute of repose in R.C. 2305.113(C) had already expired.

{¶ 71} Thus, even if the first action had been timely filed, Dr. Rose could not have used R.C. 2305.19 to refile the action on May 14, 2020, as the four-year period of repose would have expired by June 21, 2017. The one-year statute of limitations in R.C. 2305.113(A) had also already expired. And, in fact, Dr. Rose refiled his claim nearly seven years after June 20, 2013. Accordingly, Dr. Rose's claims were barred under the statute of repose in R.C. 2305.113(C).

{¶ 72} Any error by the trial court, however is harmless, because the end result is the same. *See* Civ.R. 61 (instructing courts to disregard errors that do "not affect the substantial rights of the parties").

{¶ 73} Based on the preceding discussion, the third, seventh, and eighth assignments of error are without merit and are overruled.


### IV.   Failure to Consider Dr. Rose's Affidavit

{¶ 74} Dr. Rose's first assignment of error states as follows:

Assignment of Error No. 1.   Failure to Recognize Civ.R. 56 Qualified Affidavit by Dr. Rose.

{¶ 75} Under this assignment of error, Dr. Rose appears to be arguing that the trial court erred by failing to admit his affidavit into the record or to consider it. Dr. Rose contends that he was qualified to give an opinion under Civ.R. 56(E), as he had been a practicing physician for many years.

**{¶ 76}** The trial court did not err in this regard. First, the court did mention Dr. Rose's affidavit during its summary judgment decision. *See* Order at p. 11, fn. 5. There, the court remarked that even if the dates Dr. Rose suggested in his affidavit were applied, "the Court would find that his claims were not timely filed as there remains no evidence that the four-year deadline as stated in 2305.113(C) was tolled in accordance with R.C. 2305.16." As noted earlier, the trial court stressed that the period of "unsound mind" Dr. Rose mentioned was a 17-day period in June 2013, when Dr. Rose was at Glenbeigh. Order at p. 12. In contrast, for tolling purposes, R.C. 2305.16 refers to unsoundness of mind "at the time the cause of action accrues."

**{¶ 77}** Furthermore, we have already said that even if we considered the content of Dr. Rose's affidavit and the attached documents, they indicate that a reasonably prudent person in his circumstances would have been put on notice of the need for further inquiry as to the cause of his condition and the need to pursue remedies, at the latest, on June 15, 2017. These materials also established that Dr. Rose was of sound mind at the relevant time. As a result, the trial court did not err in any manner relating to Dr. Rose's affidavit.

## V. Fraudulent Concealment

**{¶ 78}** Dr. Rose's fifth assignment of error, again quoted verbatim, states:

> Fraudulent Concealment, Fraudulent Conveyance, by Dr. Spreitzer, Employee of CCF. Contends Dr. Spreitzer purposely failed to compare Dr. Tievsky's previous MRI reading because he realized an error had been made.

{¶ 79} Under this assignment of error, Dr. Rose alleges that a Dr. Spreitzer purposely failed to compare a prior MRI reading of a Dr. Tievsky because Dr. Spreitzer realized an error had been made. This is apparently based on a comment on Dr. Spreitzer's notes that "[a] previous study 5/03/2013 is not available for comparison." Appellant's Brief at p. 6-7. During the rest of his argument, Dr. Rose refers to facts he allegedly learned after he filed his summary judgment motion by apparently looking up the phone number for "CCF's Star Imagining" in Kettering, Ohio; by reviewing a CCF advertisement, and by making a telephone call to the Ashtabula Radiology Department. *Id.* at p. 7-8.

{¶ 80} Dr. Rose did not sue Dr. Spreitzer. Based on documents attached to the complaint, a Dr. Spreitzer apparently reviewed an MRI done on Dr. Rose on May 24, 2017, based on a history of "chronic heartburn monoxide exposure, imbalance, and low serum sodium." The original report indicated that a prior study on May 3. 2013, was not available for comparison. However, a June 15, 2017 update (less than a month later) added that the previous study of May 3, 2013 was now available for comparison. There was no difference between the original and updated reports with respect to the findings made about the May 24, 2017 MRI.

{¶ 81} The complaint, Dr. Rose's memoranda, and his affidavit do not mention claims against Dr. Spreitzer based on this MRI report. In light of the preceding discussion, the matters discussed under this assignment of error either are completely irrelevant or relate to information that Dr. Rose learned after his case was dismissed. Consequently, the fifth assignment of error is without merit and is overruled.

## VI.   Conclusion

**{¶ 82}** All of Dr. Rose's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Bernard Joseph Rose, M.D.
George S. Coakley
Leslie E. Wargo
Todd A. Gray
Y. Timothy Chai
Jeffrey R. Vaisa
Richard Zinni, D.O.
Hon. Mary Lynn Wiseman